McINNIS, Judge.
This is a suit for compensation for the period of disability not to exceed 400 weeks. It was originally against the employer, M. I. Davis Co., Inc., and Preferred Accident Insurance Company of New York, but the insurance company went into receivership and on May 28, 1951 a judgment was entered in the nineteenth judicial district of Louisiana at Baton Rouge, *474 appointing the Hon. Wade O. Martin, Jr., Secretary of State, as ancillary receiver and prohibiting the prosecution of suits against it, so the demand is prosecuted against the employer only.
The plaintiff in this case lost completely the sight of his right eye, and has been paid for 100 weeks, and the demand for further compensation is resisted.
After trial on the merits in the district court judgment was rendered rejecting the demands of plaintiff and he has appealed. Defendant-appellee has answered the appeal asking that the judgment be affirmed.
The facts as to the accident and loss of right eye are admitted. For more than a year prior to December 9, 1949. plaintiff was employed by defendant as a skilled mechanic doing body and fender work, repairing car bodies and fenders, requiring the use of an acetylene welding torch, electric drill, electric grinder and other machines and tools such as air hammers and chisels.
On December 9, 1949 while working in the course and scope of his employment, operating an electric fender sander or grinder, a six-inch disc, a part of the grinder, broke or came loose and about one-half of the disc which was revolving at a high speed of approximately 4200 RPM struck him in the right eye, as a result of which he finally lost all vision in that eye.
The sole question for decision is whether or not plaintiff is limited to recovery for 100 weeks under the provisions of Section 8, Subsection 1, paragraph (d), subpara-graph 9, Act No. 242 of 1928, LSA-R.S. 23:1221, (3) (i), or whether he is entitled to recover not exceeding 400 weeks under the provisions of paragraph (b), Subsection 1, Act No. 242 of 1928, LSA-R.S. 23:1221(2).
There is no contention that plaintiff is physically disabled other than by the loss of his right eye. He is 32 years old and otherwise is in good physical condition. He was a journeyman body man, which means that he had served his apprenticeship in that line of work and was considered an expert. He was earning $57.50 per week when injured.
The medical testimony is by Dr. L. W. Gorton and Dr. Alfred P. Crain, both specialists in eye treatment. Dr. Gorton was called by plaintiff and Dr. Crain by defendant. There is no great variation in the testimony of these experts. That of Dr. Gorton is a little more favorable to plaintiff. The 17 pages of testimony of Dr. Gorton in effect says that plaintiff is physically able to do the work that he was doing when injured, but by reason of his limited vision he cannot do it as efficiently as a man with two eyes, and that there is more danger to him and his fellow employees than if he had both eyes. One of the principal defects is the lack of depth perception and fusion which is accomplished only with both eyes. The range of vision is also diminished by the loss of one eye. This is easily demonstrated by anyone by closing one eye.
Dr. Crain treated plaintiff when he was injured. He discharged plaintiff as able to return to work in January, 1951, and saw him last in April, 1952. At the time he was discharged as able to return to work he had some vision in his right eye, but it was very poor. In April, 1952 he had lost completely the vision in his right eye.
Both of these doctors say that plaintiff can do the same kind of work he was doing when injured, but that it will be more difficult for him, and he cannot do it as fast or efficiently as a man with two eyes. From their testimony it appears that as time goes on a person who has lost the sight of one eye adjusts to the loss, and finally reaches about 90% of normal as to depth perception, but not as to range of vision. How long this takes may depend on the individual.
From the standpoint of safety to the one-eyed person and to his fellow employees, it appears from the testimony of Mr. C. D. Attaway, safety engineer for Arkansas Fuel Oil Company that such persons are not usually considered for employment. It is admitted that if Mr. iBurton de Laune were called as a witness his testimony would be the same as that of Mr. Attaway. Mr. de Laune is safety engineer for Cities Service Corporation, Lake Charles, Loui *475 siana, and Mr. Attaway says that he is one of the outstanding safety engineers in America.
At the time plaintiff was injured, Mr. Robert G. Raney was manager of the body shop for defendant, but he is now in business for himself. He has known plaintiff for twenty years. Plaintiff worked under him at Roundtree-Olds before he. worked for defendant. Mr. Raney says the work in a body shop is dangerous by reason of the machines used in the worK, and his opinion is that a one-eyed worker should not undertake the work, but he would not say that a one-eyed man could not do such work.
Dr. Charles S. Boone, Deputy Coroner for Caddo Parish, testified for defendant. About August 8, 1951, after dark, plaintiff ■was involved in an accident between the automobile he was driving and a motorcycle, in which L. J. Foster was killed. Dr. Boone was conducting an investigation of the accident and plaintiff appeared before him and testified that he could see all right both at a distance and close up, and he read from a newspaper for the doctor, ánd from his ability to read, the doctor concluded that he had normal vision. He made no examination of the eyes, and he said he did not know at that time that plaintiff had only one eye. The doctor says he considers the loss of an eye a major defect.
Mr. Howard T. Hildebrand, office manager for J. H. Jenkins, contractors, testified that plaintiff had worked for Jenkins as a truck driver until about thirty days before the trial of the case, and sometimes worked on trucks in ■ the shop, including work on bodies, but he did not look at the work and did not know whether it was first class or not. Jenkins’ shop does not have welding torches, electric sanders, air, hammers or air chisels.
Mr. Clyde W. McLaughlin, foreman for Commercial Body Works for ten years said at one time a one-eyed man named McCullough worked in the body shop as a painter and that he was a good man. He also knew of another one-eyed body worker named Earl Laborde, but did not see any of his work.
Mr. Ralph L. King with King Body Works says Earl Laborde worked for him about three years, and worked on bodies of a few automobiles, but mostly truck bodies. Mr. King says Laborde did good work. He said Laborde got stuff in. his eyes and had to go to a doctor to get it out, and said it is a common thing for body workers to get things in their eyes. There are air compressors, grinders, sanders and welding torches in the shop. This shop works mostly on trucks, and does not compete with shops that work on passenger cars.
Mr. R. D. Coates, insurance adjuster, investigated the accident, and says that Mr. Robert Raney told him that plaintiff would not assume responsibility of repairing a total wreck, but we do not understand what this has to do with this case.
Plaintiff’s testimony is to the effect that he has been doing body repairs since 1938. He started work with his brother, then for Peterson Motor Company, then a short time for Nichols Brothers, then five months for Roundtree-Olds Cadillac Company, then at Barksdale Field from 1943 until 1945, and then worked in a small shop of his own at his home until 1948 when he went to work for defendant. He says that on account of his loss of range of vision and depth perception he can no longer do work requiring such precision as repairing bodies, and that in addition the danger of injury to himself and fellow workers is greatly increased.
Plaintiff has been driving trueles since October, 1950, and is a member of the Teamster’s Union. The union wage scale is $1.27% an hour, but he is not regularly employed on account of not being able to find work at times. He says his ability to judge depth has improved some. He claims that he is bothered by double vision when he reads, and that he has difficulty reading fine print.
The only work he has done on bodies was working on a small number of truck bodies at Jenkins while employed there principally to drive trucks, and he says he could not do the work satisfactorily. The Jenkins shop.does not have the kind of tools to work with that a regular body shop *476 uses, and he has not tried to use the same kind since his injury. He believes he cannot do that kind of work now, from having worked on the truck bodies.
Plaintiff is not totally and permanently disabled in the usual understanding of the definition of these words. He is able to drive a truck, and has been driving trucks, however, so far as his occupation of expert'repair man on bodies of automobiles he might be considered totally disabled because of his inability to see how to do this kind of precision work, and also because of the added hazard both to himself and to fellow workers. In all probability he will have greater difficulty finding employment. He has had no special training in any line of work except body work. He was hardly 30 years old when he was injured, and had been engaged'iñ body work for some eleven years, so he hardly had a chánce to study another trade or occupation.
The fact that two' other body workers with one eye performed satisfactory work is not conclusive proof that plaintiff can do the same work he was doing. One of these men was a painter, and his work would hardly require the use of the sort of working tools plaintiff was required to use. The other man worked almost exclusively on truck bodies, which apparently are not required to be as well finished as automobile bodies.
The evidence in this case is not conclusive that plaintiff cannot under any circumstances do the same kind of work he was doing when injured, but it is conclusive that it would be much more difficult for him and that it would take him longer, and that the hazard to himself and fellow workers would be increased, leading to the conclusion that he is totally disabled to follow his former occupation.
Decisions of the appellate courts of our state are not uniform in allowing compensation for total disability in cases where a’ worker though unable to follow his previous occupation, can do other work.
Most of the cases on this subject aré cited and discussed by Mr. Malone in his treatise on Louisiana Workmen’s Compensation Law and Practice, sections 272, 273, and 274, page 325 et seq. We have examined the numerous cases. Respectable authority is found on both sides of the question, but we believe the weight of authority is on the side of the skilled worker who has been disabled to work at his occupation, even though he is able to work in some other occupation at as good or better pay. To cite and discuss all these cases would serve no useful purpose.
Defendant has cited the late case of Matthews v. Louisiana Long Leaf Lumber Company, La.App., 55 So.2d 33, where it was held that a truck driver who had lost an eye could still drive a truck. The Supreme Court granted writs in the case, but it was settled before it could be heard in the Supreme Court.
The plaintiff in the present case can drive a truck. In fact that is the only kind of work he has done since his injury, but it is not the same or even similar to the work he was doing when injured.
For the foregoing reasons, the judgment appealed from is set aside, and it is now ordered, adjudged and decreed that the plaintiff, Donald ¿B. McDearmont, recover judgment against the defendant, M. I. Davis Company, Inc., for compensation during the period of his disability, not however to exceed 400 weeks, at the rate of $30 per week, beginning December 9, 1949, with 5% per annum interest on past-due payments, less credit for 100 weeks paid.
Defendant appellee to pay all costs of this proceeding in both courts.
GLADNEY, J., dissents.