AYRES, Judge.
This is an action for workmen’s compensation wherein plaintiff seeks to recover of his employer and its compensation insurer, in solido, under the Workmen’s Compensation Statute, LSA-R.S. 23:1021 et seq., compensation at the maximum statutory rate of $35 per week, as provided in cases of permanent and total disability, less compensation previously paid, and for hospital and medical expenses incurred, and *773 additionally against the insurer penalties and attorney’s fees pursuant to LSA-R.S. 22:658.
From a judgment awarding plaintiff compensation and hospital and medical expenses as prayed for and further condemning the defendant insurer for 12 percent of the unpaid installments as penalties and $250 as attorney’s fees, the defendants appealed. Plaintiff, in answer to the appeal, seeks an increase of the attorney’s fees to $2,000.
Plaintiff by trade is a common laborer engaged in construction work, in the performance of which his duties exacted of him the doing of hard manual labor. On August 1, 1957, while employed by the Southern Wreckers, Inc., in demolishing the Levy Building at Texas and Edwards Streets in the City of Shreveport, plaintiff received serious accidental injuries by reason of a fall from the second floor to the street below. The accident occurred while he and a foreman were in the act of removing the casement of a window. Plaintiff was holding the window and the foreman, by means of a chisel and wrecking bar, was attempting to detach the window from the frame, when, suddenly and without warning, the window became detached, causing plaintiff to lose his balance and he, together with the window, fell through the opening to the street below.
Plaintiff was immediately hospitalized and examinations were made and X-rays taken, from which it was ascertained that plaintiff had'sustained a comminuted fracture of the left os calcis with a major fracture line extending from the junction of the posterior and inferior surfaces of the bone anterior and superiorly to the mid-portion of the superior articular surface of the os calcis, with extension into the talo-calcaneal joint. There was a separation of approximately one centimeter in the left portion of this fracture. A large bone fragment approximately 2.5 centimeters in diameter was separated from the posterior surface of the os calcis on the medial aspect,, There was also a chipped fracture of the posterior surfáce of the talus.' On the following day, under a general anaes-thetic, a Steinman pin was drilled through the os calcis to afford fixation of the fragments. This pin was incorporated in a plaster cast extending from the toes to a point just below the knee. Plaintiff remained in the hospital until August 11, 1957. Dr. John M. Goslee, who performed this operation, was of the opinion, as expressed in a report of August 27, 1957, that plaintiff was totally disabled at that time from carrying out the routine duties of his occupation. He recommended, on account of the involvement of the subastragalar joint, a fusion operation should be performed on that joint. At that time, according to his report, plaintiff could be expected to be disabled from carrying on the routine duties of his occupation for a period of six to nine months from the time of injury, with permanent partial disability amounting to, at least, loss of motion of the subastragalar joint. For the surgery recommended, plaintiff was again admitted to the hospital October 7, 1957, where the fusion operation was performed October 8, 1957, after which he was discharged from the hospital October 16, 1957, but continued as an out-patient.
As a further result of the accident plaintiff claimed to have sustained a sprained back and to alleviate the pain in the lumbo-sacral area of the back upon bending or motion, he was fitted with a back brace. There was, however, deterioration or thinning of the fat pad, or cushion, underneath the tip of the heel of the left foot. To relieve pressure on the heel, plaintiff was fitted with a shoe with a “cut-out” heel.
First for consideration is the extent and probable duration of plaintiff’s injury as affects his ability to perform the usual duties of his occupation or those of a similar character. On the trial, eight months and twenty days following the accident, plaintiff testified that he was unable to do work as a common laborer. At that time he was wearing the back brace and was walking by means of a cane. He described his *774 foot as stiff and on walking became badly-swollen and pained severely; that the cutout heel relieved the pain for short periods of time but pain and swelling were precipitated by any extended use of his foot; that the restriction of motion in his ankle made it difficult for him to walk over rough or uneven surfaces or to step over objects or from one height to another or to use his foot in balancing himself.
Dr. D. F. Overdyke, an orthopedic surgeon, who subsequently examined plaintiff on March 25 and April 21, 1958, and subsequently treated plaintiff, reported, following his first examination, that plaintiff presented a typical picture of a fracture of the os calcis, followed by subastragalar fusion, and that the pain under the plantar aspect of the left os calcis was not unusual due to the considerable loss of the fat pad under the heel and to the bony irregularity resulting from the healing process in that area. The Doctor testified that plaintiff was totally disabled to return to heavy manual labor and it was problematical as to the permanency of plaintiff’s ailment due to the fact that recovery to the heel, in most instances, is prolonged on account of poor blood supply, necessitating considerable time for the repair of the injury sustained there. The Doctor’s estimation was that plaintiff had sustained 35 percent of the loss of function of his leg, or 12 to 14 percent of the body as a whole, which, together with the stiffness of the foot, would cause plaintiff to experience difficulty in walking or weight-bearing or lifting on sloping or uneven surfaces, with loss of balance and agility on narrow surfaces, all of which would make him more prone to fall. In testifying, he expressed an opinion that plaintiff’s return to work was an indefinite proposition, and he would not approve him for manual labor.
In his report of March 27, 1958, predicated upon his examination of March 12, 1958, Dr. Goslee, with reference to the left foot and ankle, stated: “There is the expected amount of loss of inversion-eversion following successful subastragalar joint fusion. Dorsiflexion of the ankle is complete, but plantar flexion is restricted about 65%”, and “that loss of function of 18% of the left lower extremity exists and will probably be permanent.” However, it was his opinion that plaintiff should be able to return to manual labor.
From a preponderance of the testimony, it could only be concluded that plaintiff, on the date of trial, was totally incapacitated to perform the same work or that of a similar character he was doing at the time of his injury. The subastragalar joint was fused and immobilized and the use of his foot and leg was restricted. He will hereafter experience difficulty in walking on rough or uneven surfaces and in climbing, or in balancing himself on narrow surfaces. Danger of his falling is materially increased and the danger and difficulty would be further increased when carrying heavy loads, as he would be required to do as a common laborer in construction work. As of the date of trial, plaintiff’s disability was rendered more acute by the constant swelling and pain in his foot.
That the classification of plaintiff’s accustomed employment is that of a common laborer is unimportant. It is important, however, that in the performance of his duties as a common laborer plaintiff would be at times required to perform operations of which he is physically incapable by reason of the injuries to his foot. He cannot always choose the place or kind of surface upon which he must work in order to maintain his balance and obviate the difficulty and danger of falling. It is well established in the jurisprudence of this State that a disability to do work of a reasonable character is deemed total within the intendment and purpose of the Workmen’s Compensation Act whenever it appears that the employee, due to the injury, is unable to perform work of the same or similar character as that which he was accustomed to perform. Hughes v. Enloe, 214 La. 538. 38 So.2d 225.
*775 It is equally well established that in order to be entitled to workmen’s compensation, the injured employee is neither expected nor required to work in pain or when, in so doing, the hazards of his own health and safety, as well as that of his fellow employees, will be materially increased. Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1; Williams v. Southern Advance Bag & Paper Co., Inc., La.App., 87 So.2d 165; Parker v. Armour & Co., La.App., 86 So.2d 573; Nubles v. Texas Gas Transmission Corp., La.App., 72 So.2d 565; Reeve v. Clement-Braswell Machine & Fabricating Works, La.App., 66 So.2d 387; McDearmont v. M. I. Davis Co., Inc., La.App., 64 So.2d 473.
The rule is likewise well established that where a claimant is shown to be totally disabled at the time of the trial and there is no evidence on which to fix a definite period for the duration of the disability, compensation should be awarded for the maximum period prescribed for permanent disability. Delouche v. City of Monroe, La.App., 84 So.2d 259; Strother v. Standard Acc. Ins. Co., La.App., 63 So.2d 484; Peavy v. Calcasieu Paper Co., Inc., La.App., 70 So.2d 755; Thomas v. Crown-Zellerbach Corp., La.App., 101 So.2d 478; Woodward v. Blair, La.App., 197 So. 920.
 It has been said that if at the time of trial it appears that the injury will produce disability for an extended period, the court will not usually indulge in conjecture or attempt to fix definitely the number of weeks for which compensation shall be paid. The award in such instances is generally made for the duration of the disability, subject, of course, to the appropriate maximum. Whenever thereafter the disability ceases, the employer is authorized by the statute to seek a modification of the judgment. He is thus fairly protected against imposition. Malone Louisiana Workmen’s Compensation Law and Practice, § 280, page 354. For all practical purposes, plaintiff must be considered as suffering from permanent and total disability; aggravated and made more pronounced by the pain suffered.
Defendant insurer urges with considerable force that its actions in tendering checks in a slightly insufficient amount as for partial disability were neither arbitrary, capricious nor without probable cause and, therefore, it was error to assess penalties and attorney’s fees pursuant to' the provisions of LSA-R.S. 22:658.
Plaintiff’s claim for penalties and attorney’s fees is predicated (1) upon the insurer’s failure to pay compensation between March 27 and April 24, 1958, at the statutory minimum of $10 per week prescribed in LSA-R.S. 23:1202, as amended, and paying instead $8.14 per week, and (2) upon the insurer’s discontinuance of all compensation payments after April 24, 1958. On the basis of Dr. Goslee’s report to, defendant of March 27, 1958, plaintiff’s compensation was calculated upon a basis of partial disability of 18 percent loss in the function of his lower left extremity, which percentage reduced the installments to $8.14. This amount was tendered to plaintiff for four weeks. Checks issued therefor were never cashed. The discrepancy was due to a miscalculation of defendant’s counsel in overlooking a recent amendment to the statute increasing the minimum compensation to $10 per week, or to full wages where the wages were less than that amount. There is no showing defendant or its attorney acted in bad faith in making this calculation or that their actions were arbitrary, capricious or without probable cause. A miscalculation unintentionally made could hardly be construed to constitute arbitrary or capricious action. Neither could such action be construed as taken without probable cause. Had plaintiff called attention to the discrepancy, the error, no doubt, would have been promptly corrected. In discontinuing payments after April 24, 1958, the defendant relied upon the report of Dr. Goslee, orthopedic surgeon, who treated plaintiff from the date of his injury, wherein defendant was in *776 formed that, in the Doctor’s opinion, plaintiff was able to resume manual labor. No showing was made of bad faith or arbitrary or capricious action on the part of defendant, who relied upon the doctor’s opinion.
In Fruge v. Pacific Employers Insurance Co., 226 La. 530, 76 So.2d 719, 721, it was said :
“We can concede that defendant may have been in good faith in refusing to pay plaintiff compensation for total and permanent disability on the ground that there existed a bona fide dispute between them as to whether compensation was due for such disability. However, there existed no bona fide dispute between them as to plaintiff’s partial disability, and thus defendant could not have been in good faith when it discontinued all compensation payments on March 30, 1953. * *
“If instead of cutting off all compensation payments the defendant had tendered to the plaintiff an amount which it thought to be due for partial disability, our decision in this case might be different. The defendant, however, did not offer plaintiff any compensation whatever and thus forced plaintiff to litigate although the defendant knew from the medical reports in its possession that compensation was due for at least partial disability.” (Emphasis supplied.)
In the instant case there was no dispute as to compensation due for partial disability. Payment thereof was tendered plaintiff, who refused its acceptance and instituted this action. A bona fide dispute existed as to whether compensation was due as for total and permanent disability. Under these circumstances, there appears no justification under the statute for the imposition of penalties and attorney’s fees.
For the reasons assigned, the judgment appealed is amended by rejecting plaintiff’s demands for penalties and attorney’s fees and, as thus amended, the judgment is affirmed at appellant’s cost.
Amended and affirmed.