138 So.2d 460 (1962)
Percy AYMONDE, Plaintiff-Appellant,
v.
STATE NATIONAL LIFE INSURANCE COMPANY et al., Defendants-Appellees.
No. 494.
Court of Appeal of Louisiana, Third Circuit.
March 8, 1962.
*461 Robert F. DeJean, Opelousas, for plaintiff-appellant.
Dubuisson & Dubuisson, by William A. Brinkhaus, Opelousas, for defendant-appellee.
Before TATE, FRUGE and CULPEPPER, JJ.
FRUGÉ, Judge.
This is a suit brought under the provisions of the Workmen's Compensation Act by plaintiff-appellant, Percy Aymonde, for total and permanent disability as a result of an accident in which plaintiff lost an eye. Plaintiff's employer, State National Life Insurance Company, and its compensation insurer, Hartford Accident and Indemnity Company, are the defendants-appellees. The trial court awarded judgment at the rate of $35.00 per week for a period of 100 weeks, plus medical expenses not to exceed $2,500, together with interest on past due payments until paid. The plaintiff has appealed contending that the trial court erred in failing to hold that he was totally and permanently disabled and entitled to compensation for 400 weeks, and in disallowing penalty, interest and attorney fees.
Percy Aymonde, the plaintiff-appellant, seeks benefits payable under the Workmen's Compensation Act for total and permanent disability resulting from an accident and consequent injuries, in which he was involved on September 28, 1960. It is undisputed that on the morning of the accident Aymonde was driving his automobile from his home to the office of his employer, when a rock, or some foreign object from an oncoming vehicle struck the side window of the automobile, causing a piece of foreign matter to pierce the pupil of the left eye; the plaintiff immediately lost control of his vehicle and turned over in the ditch.
*462 Plaintiff was taken to the hospital for medical treatment. Soon thereafter, the plaintiff's right eye developed a sympathetic ophthalmia with the injured left eye which necessitated the removal of the injured left eye; this operation removed the continuing cause of the sympathetic ophthalmia and plaintiff began to recover the use of his uninjured right eye. At the time of the trial, plaintiff (with the use of eye glasses) had a 20-20 vision in the right eye, however, he was handicapped by a lack of depth perception. This lack of depth perception impaired his driving ability, which plaintiff claimed materially affected his ability to safely carry on his duties as debit collector. (Another argument made by plaintiff was that dust from the country roads which he traveled had a tendency to cause some irritation between the glass eye and the left eye socket.)
It appears that plaintiff used his home as a base of operation; he was an insurance salesman and debit collector, operating what is known as a "debit route". He worked mostly by using his own vehicle leaving his home (Port Barre, Louisiana) and traveling modern highways, graveled roads, as well as dusty country roads in going about his duties, and returning to his home at night. He was paid $300.00 per month salary plus commission on new business.
On the day of the accident (while on his way to Opelousas to report in for instructions, to attend a sales meeting and to turn in the last day's money receipt) plaintiff states that he stopped by the house of Mrs. Bessie Winn in order to collect a premium or debit which was overdue. Defendants contend that plaintiff did not stop by Mrs. Winn's house on his way to the Opelousas office, however, Mrs. Winn testified that plaintiff did stop by her house. We believe that plaintiff did stop by Mrs. Winn's house. Assuming arguendo, that plaintiff had not stopped by to collect the overdue debit or premium, he would nevertheless be covered under the compensation Act. His journeying to Opelousas (in order to turn in his money receipts, and to attend the sales meeting and receive instructions) was a necessary and required part of his work and he was within the course and scope of his employment the moment he left his home to commence his journey. In O'Connor v. American Mutual Liability Ins. Co., La.App., 87 So.2d 16, the plaintiff was a route worker selling merchandise from a truck and was not carried on his employer's payroll. One of his duties required the carrying of cash receipts of sales on his person. A bandit committed an assault upon him while he was carrying company money; the court found that the injury was compensable as arising out of his employment.
Plaintiff claims the penalties provided for by LSA-R.S. 22:658 for defendant's failure to make payment of compensation within 60 days after the receipt of proof of loss. We do not think that the penalties provided for in said statutory provision should be imposed in this case, for the reason that it is our opinion that there is nothing in the record to clearly indicate that the failure to make payment of the claim was arbitrary, capricious or without probable cause; considering all the facts and circumstances of this case, we think that the trial court did not err in disallowing penalty, interest and attorney fees. We are of the opinion, however, that the trial court should have awarded compensation at the rate of $35.00 per week for a period of 400 weeks, rather than only 100 weeks; the record shows that the plaintiff was totally and permanently disabled at the time of the trial.
In order to ascertain whether or not plaintiff could be expected to have a definite period of disability, we refer to the testimony of Dr. D. K. Harmon who testified as follows:
"Q. We have no way of telling, do we, when depth perception or the compensation for it returns to a person who has lost an eye?
*463 "A. No, that's learning process. There is not no test that I know of."
We quote again from the testimony of Dr. Harmon:
"Q. And it is possible also that he may half regain dept perception as he should
"A. Oh, yes. Well, he will never regain binocular depth perception. He will never regain the stereoptic part and he will never regain the conversion part, but the other part probably will come into effect enough to overcome most of that. That is what usually happens.
"Q. Well, I mean even with one eye he will possiblyit is possible that he will not regain depth perception that a one-eye person does?
"A. Oh, it's possible.
"Q. And the only answer to that is time, is that correct?
"A. Yes."
Further, the medical testimony indicates that although many of those who lose one eye eventually compensate and adapt by experience to where they can estimate distances, since their permanent loss of binocular vision is only somewhat compensated for by their ability through experience to estimate, and since they have a permanent limitation of their visual field, they cannot drive as safely as those with two eyes. See McDearmont v. M. I. Davis Co., La. App. 2 Cir., 64 So.2d 473. The plaintiff himself testified, verified by lay witnesses, that because of such hazard he was still unable to drive his automobile, a necessary duty in the occupation in which injured, and the medical specialist did not testify to the contrary. See also Lindsey v. Continental Cas. Co., 242 La. 694, 138 So.2d 543 (decided Feb. 19, 1962).
In Trahan v. Louisiana State Rice Milling Company, La.App., 100 So.2d 914, the court stated:
"The only question presented before us is whether or not petitioner is totally and permanently disabled under Louisiana Workmen's Compensation Act, LSA-R.S. 23:1021 et seq. Several doctors testified as to the injury and the medical condition of the petitioner. They were essentially in agreement to the fact that, as a result of the injury, a cataract formed on the right eye which was absorbed in due time. The healing process had been completed and the injured eye is without pathology other than that petitioner has lost most of the vision in his right eye. The left eye is normal, and the doctors agreed that petitioner is able to perform any type of manual labor which does not bring him into close proximity to moving machinery and belts.
"* * * There is also some evidence in the record to the effect that there is a great deal of dust present during the operation of the rice mill, and the doctors testified that the presence of a great amount of dust could have effect on petitioner's eye. Although petitioner's depth perception is somewhat limited at the present time, the medical testimony indicates that it will improve within the next few months. The medical testimony indicates that petitioner is now in the position of a perfectly normal man except for the lack of vision in his right eye. He has full vision in his good eye and up to 55 degrees towards the side of the lost eye.
'The record shows that at the time of the accident petitioner was employed as a `sweeper and oiler'. Although the job was classified as common labor, it appears that at least some degree of skill was required in the oiling of the machinery. The record clearly shows that in oiling this machinery on the average of about twice daily, petitioner came into contact with heavy machinery, and was required to come into *464 close contact with turning wheels and belts. All of the doctors testified that such a job would be more hazardous for a one-eyed man because of his limited vision.
"The defendants claim that there are many other unskilled jobs in the rice mill which the petitioner could have adequately performed in his present condition, and for which he would have received the same wages. However, the law does not require the injured or disabled party to perform a different type of job, the law provides for total and permanent disability if the injured party is unable to substantially perform work of the same reasonable character.
"In Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6, 15, the Supreme Court, in quoting from Pete v. Metropolitan Life Insurance Company, La. App., 171 So. 868, said:
`"Total and permanent disability from performing any work for compensation or profit does not require that insured become absolutely helpless, but merely requires such disability as renders him unable to perform substantial and material part of his occupation in usual and customary way.'
"The record shows that the oiling of the machinery was the regular task of petitioner, and that such task was a material and substantial part of his employment at the time of the accident. Furthermore, the continuation of his task of oiling the machinery in his present handicapped condition renders his job substantially more hazardous than it was prior to the accident, and all of the doctors testified that they would not encourage petitioner to work in such close proximity to moving machinery in his present condition."
The settled jurisprudence was clearly stated in Moore v. Great American Indemnity Company, La.App., 106 So.2d 771, to wit:
"It is equally well established that in order to be entitled to workmen's compensation, the injured employee is neither expected nor required to work in pain or when in so doing, the hazards of his own health and safety, as well as that of his fellow employees, will be materially increased. Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1; Williams v. Southern Advance Bag & Paper Co., Inc., La.App., 87 So.2d 165; Parker v. Armour & Co., La.App., 86 So.2d 573; Nubles v. Texas Gas Transmission Corp., La.App., 72 So.2d 565; Reeve v. Clement-Braswell Machine & Fabricating Works, La.App., 66 So. 2d 387; McDearmont v. M. I. Davis Co., Inc., La.App., 64 So.2d 473.
"The rule is likewise well established that where a claimant is shown to be totally disabled at the time of the trial and there is no evidence on which to fix a definite period for the duration of the disability, compensation should be awarded for the maximum period prescribed for permanent disability. Delouche v. City of Monroe, La.App., 84 So.2d 259; Strother v. Standard Acc. Ins. Co., La.App., 63 So.2d 484; Peavy v. Calcasieu Paper Co., Inc., La. App., 70 So.2d 755; Thomas v. Crown-Zellerbach Corp., La.App., 101 So.2d 478; Woodward v. Blair, La.App., 197 So. 920."
For the reasons assigned the judgment of the trial court is amended so as to grant plaintiff compensation of $35.00 per week for a period during disability, not to exceed 400 weeks, and, as thus amended, the judgment is affirmed. Defendants to pay all costs.
Amended and affirmed.
CULPEPPER, J., concurs in part and dissents in part.
For opinion see 139 So.2d 805.