hBAGNERIS, Judge.

STATEMENT OF THE CASE

This case involves the death of traveling salesman, Leon Robinson, III (“Mr.Robinson”). Mr. Robinson was employed as a sales representative for Simmons Company (“Simmons”), an appliance manufacturer. He resided in East New Orleans and commuted to and from work. His job duties entailed calling upon a group of approximately 1100 retailers, known as the Associated Volume Buyers (“AVB”), in a four-state territory which included Wisconsin, Illinois, Indiana, and Ohio. In addition to his New Orleans home, Mr. Robinson owned a home in Chicago that he used as both an office and a dwelling while in the area on business. Under the terms of his employment, Mr. Robinson was given a stated salary, and was reimbursed for all his travel expenses, including airfare and automobile mileage.
Mr. Robinson started this job assignment in July of 1996. He flew to Chicago almost every Monday morning. From Chicago, he would drive to the designated sales area that he was to service during that week. On Fridays, Mr. Robinson would return to his New Orleans home to spend the weekend with his family.
[2On Monday, October 14, 1996, Mr. Robinson left New Orleans at 7:30 a.m. He landed in Chicago at approximately 11:00 a.m. He had lunch with a friend, Valerie Bulliner, at 1:00 p.m., which lasted for approximately an hour. After lunch, Mr. Robinson went to the Simmons headquarters where he used the copier and spoke with his immediate supervisor, Daniel Sumner (“Mr.Sumner”), about his upcoming sales trip to Wisconsin. Mr. Sumner requested that Mr. Robinson give an impromptu demonstration of his Wisconsin sales’ presentation. Mr. Robinson did so. Mr. Robinson left the Simmons headquarters at approximately 4:46 p.m. with co-employee, Sharon Smith, to whom he had agreed to give a ride home. Mr. Robinson dropped Ms. Smith off at her home at approximately 6:00 p.m.
Mr. Robinson visited with another friend, Linda Jones Fallow, at his Chicago home at around 9:00 p.m. that evening. At approximately 10:30 p.m., Mr. Robinson placed a phone call to Valerie Bulliner (“Ms.Bulliner”), his lunch companion from earlier in the day. Mr. Robinson also spoke to another friend, Lois Lee, at 8:00 p.m. and again at 11:00 p.m.
Mr. Robinson was scheduled to meet with Richard Hargrave of Hargrave Appliances in Merrill, Wisconsin at 8:00 a.m. on October 15, 1996. 'Merrill, Wisconsin is located approximately 300 miles from Chicago or a six(6) hour drive away. Mr. Robinson was also scheduled to meet with another customer located in Rice Lake, Wisconsin later that day. Mr. Robinson did not make any of his sales calls, as it is presumed he disappeared some time after 11:00 p.m. on October 14,1996. The police found his abandoned car in Gary, Indiana on October 31, 1996. His body was found on December 13, 1996 in a vacant lot on lathe south side of Chicago. The autopsy report confirmed that he had died of multiple gunshot wounds to the head. His death was declared a homicide.
Brenda Robinson, individually and on behalf of her minor child, Noel Robinson, filed the instant workers’ compensation claim on or about November 19, 1997. After a trial of the matter, the Honorable Clara E. Toombs, the hearing officer, rendered judgment in favor of the Plaintiffs and against the Defendant, awarding indemnity, death benefits, and funeral costs under the Louisiana Workers’ Compensa *115 tion Act.- The reasons for judgment were not reduced to writing. The hearing officer found specifically that Mr. Robinson, a traveling salesman for Simmons, died while in the course and scope of his employment. In addition, the hearing officer denied Mrs. Robinson’s (“Plaintiff’) request for penalties and attorneys’ fees, finding that that Simmons was not arbitrary and capricious “due to the nature and circumstances surrounding the deceased employee’s yet unsolved murder.” From this judgment, Simmons took á sus-pensive appeal. The Plaintiffs answered the appeal urging that the hearing officer erred in failing to assess penalties and attorneys’ fees against Simmons. We affirm the trial court’s judgment.

LAW AND ARGUMENT

LSA - R.S. 23:1031(A) provides as follows:
If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.-
Moreover, LSA - R.S. 23:1231(A) provides in relevant part:
| ¿For injury causing death within two years after the last treatment resulting from the accident, there shall be paid to the legal dependent of the employee, actually and wholly dependent upon his earnings for support at the time of the accident and death, a weekly sum as provided in this Subpart.
Accordingly, LSA - R.S. 23:1251 provides the following:
The following persons shall be conclusively presumed to be wholly and actually dependent upon the deceased employee:
(1) A surviving spouse upon a deceased spouse with whom he or she is living at the time of the accident or death.
(2) A child under the age of eighteen years (or over eighteen years of age, if physically or mentally incapacitated from earning) upon the parent with whom he is living at the time of the injury of the parent, or until the age of twenty-three if enrolled and attending as a full-time student in any accredited educational institution.
In order to recover benefits under the Louisiana Workmen’s Compensation Law, an employee must establish that he received a personal injury by accident arising out of and in the course of his employment.- LSA - R.S. 23:1031; Simpson v. S.S. Kresge Company, 389 So.2d 65 (La.1980). For the death to be compensable, it must both arise out of and in course' of employment. Ford v. City of Alexandria, 155 So. 48 (La.App. 2 Cir.1934). An accident occurs during the course of the employment when it occurs during the time of the employment and at a place contemplated by the employment. Kern v. Southport Mill, Ltd., 174 La. 432, 141 So. 19 (1932). The' plaintiffs must establish both the “arising out of’ and “in the course of’ elements. Id.
The Louisiana Supreme Court expounded upon the application of LSA - R.S. 23: 103,1 in Lisonbee v. Chicago Mill & Lumber Co., 278 So.2d 5 (La.1973), where they stated:
| s“The terms arising out of and in the course of are not synonymous. The former suggests an inquiry into the character or origin of the risk. The two requirements cannot, however, be considered in isolation from each other. A strong showing by the claimant with reference, to the arise-out-of requirement may- compensate for a relatively weak, showing, on the During-course-of requirement, of vice versa. As a corol.lary it follows that .whenever .the showing with respect to both requirements is *116 relatively weak a denial of compensation is indicated.”
More specifically, when confronted with the issue of assault and workers’ compensation in Mitchell v. Employers Mutual Liability Insurance Company, 341 So.2d 35, 38 (La.App. 3d Cir. 1976), the Louisiana Third Circuit Court of Appeal held:
“If the employee was actively engaged in the performance of his duties, or even if he was taking a short permissible rest from his labor, he should be protected against assault, without reference to the nature of the difficulty that prompted the attack or the identity of the assailant.”
For a further analysis of LSA - R.S. 23:1031, we look to the application of the statute in certain cases. In Hull v. Liberty Mutual Insurance Co., 236 So.2d 847 (La.App. 1 Cir.1970), the plaintiff was fatally injured in an automobile accident in West Baton Rouge Parish in a vehicle furnished by his employer, Singer Sewing Machine Company. The plaintiff was employed as a salesman for the company, and his general sales and service area included West Baton Rouge Parish, where he was fully authorized to sell and service his employer’s products without any specific authorization from his supervisor. However, on the day of the accident, the plaintiff had not been given any specific, work-related instructions; nor did his call book reveal any particular appointments that would necessitate a trip to West Baton Rouge. Nonetheless, the First Circuit Court of Appeal held, while citing to Kern v. Southport Mill, that under these circumstances, it must be presumed that the decedent was on his company’s business at the time of his death and was therefore acting within the course of his employment. Id. at 849.
IfiA year later, this Court encountered a similar matter in DeMaggio v. United Mills Corp., 252 So.2d 530 (La.App. 4 Cir.1971). In DeMaggio, the plaintiff, a lingerie salesman for United Mills Corp. (“United Mills”), was killed when the car that he used for business purposes only struck a tree in New Orleans. Prior to the accident, the plaintiff had attended a business appointment in Baton Rouge from which he was returning to his office-home in New Orleans. Id. at 531. The plaintiff was responsible for his own car, travel and lodging expenses, as well as his sample merchandise, and all other items of business overhead. He was paid on a commission basis' only.
His widow sued United Mills for death benefits and funeral expenses under the Louisiana Workers’ Compensation Act, insisting that on the day of the accident the plaintiff was following his usual Friday routine in connection with his employment Alternatively, United Mills argued that although the plaintiff was en route to his office-home at the time of his death, he was not in the course of his employment unless he was to perform other duties after arriving at his office-home. Notwithstanding, the trial court ruled in favor of the widow, granting her request for both death benefits and funeral expenses. Id.
We affirmed the lower court’s decision for the following reasons. First, we found that the facts and circumstances of the case invalidated the general rule that an employee is not in the course of his employment while traveling to or from work. The reason for this finding is because of the rule that additional consideration is warranted in cases involving a traveling salesman acting within the course of his employment when there is no fixed place of employment and the hours are irregular. Likewise, we held that such an employee, traveling from one place of work to another, is within the course of his employment. Next, we found l7it improper to distinguish between an accident which occurred on the first leg of his travel, from office-home to a work location; or on a middle leg of his travel, from one work location to another; or on the last leg of his travel, from a work location to his office-home, as was the situation in this case. Therefore, we held that since the *117 plaintiffs travel by automobile to a series of work locations was a required element of his employment, he was in the course of his employment at the time of the accident. We concluded that the plaintiff in DeMag-gio was within the course of his employment at the time of the accident, which arose from that employment. Id. at 532.
One year following DeMaggio and two years after Hull the Third Circuit Court of Appeal addressed the issue of traveling salesmen and the Louisiana Workers’ Compensation Act in what has become the most authoritative decision on the matter. In Gautreaux v. Life Insurance Company of Georgia, 256 So.2d 832 (La.App. 3 Cir.1972), the plaintiff, who was employed as an insurance salesman and premium collector for the defendant, Life Insurance Company of Georgia (“Life”), was involved in a one-car accident that left him totally and permanently disabled as a result of back injuries he sustained in the accident. The plaintiff had been assigned a ‘debit route’ whereby he spent the first four days of each week traveling from house to house along this route to collect premiums and sell new policies, while returning to his home each afternoon or evening. The company allowed him a great deal of discretion in the manner in which these collections and sales were made, and during the first part of each week,- he was not required to be at any particular place at any one time. The plaintiff did not have an office or headquarters other than in his home. Moreover, the plaintiff was expected to use his own automobile or to provide his own means of transportation in carrying out [«the duties of his employment, and he was required to carry automobile liability insurance without any reimbursement for any of the expenses he incurred in operating the car.
At the time of the plaintiffs accident, he was en route from his home to the company’s office in Lafayette to turn in the money he had collected and to submit his weekly report. The plaintiff initiated this suit after Life rejected his demands for compensation benefits. Similarly, Life filed a motion for summary judgment alleging that their refusal of benefits was justified under the following grounds: (1) they did not provide transportation for the plaintiff, (2) the accident did not occur on the employer’s premises, and (3) the plaintiffs injuries were sustained while plaintiff was on his way to work, and therefore he was not in the course of his employment and not eligible to recover workers’ compensation benefits. Id. at 833-834. The trial judge granted the summary judgment, thereby dismissing the plaintiffs suit. The Third Circuit Court of Appeal reversed.
In reversing the trial judge’s decision, the Third Circuit Court acknowledged the general rule which states that an injury suffered by an employee away from his employer’s premises1'while going to or returning from work,-does not arise out of and in the course of his employment. However, they also recognized that the general rule was subject to a number of exceptions. Specifically, the general rule does not apply where the- employee is a traveling salesman, or where he is required to travel from place to place in the performance of his duties and to provide his own means of transportation in doing so. In such an instance there is no fixed place of employment and his hours necessarily are irregular. Thus, if the employee sustains an injury while traveling under those circumstances, although not on the employer’s premises, his injuries will be considered as having been sustained in |flthe course of his employment if he was engaged in his employer’s business at the time of-injury, and not merely pursuing his own business or pleasure, and the necessities of his employer’s business required him to be at the place of the accident when it occurred.
In making their decision, the.court considered its earlier holding in Aymonde v. State National Life Insurance Co., 138 So.2d 460 (La.App. 3 Cir.1962) as the facts in Aymonde were almost synonymous to *118 the facts of the Gautreaux case. In Ay-monde, the plaintiff, an insurance salesman and debit collector who worked an established route using his own vehicle and using his own home as his office or headquarters, was injured in a one-car accident while en route to his employer’s office in Opelousas to report in for instructions, to attend a sales meeting and to deposit money previously collected. Gautreaux, 256 So.2d at 834. The court held that the plaintiff was in the course of his employment when the accident occurred, as his trip to Opelousas was a necessary and required part of his work. Id. Accordingly, the Gautreaux court held that the evidence presented at the summary judgment hearing suggested that the plaintiff was in the course of his employment when the accident occurred, and his claim was therefore governed by the provisions of the workers’ compensation act. Gautreaux, 256 So.2d at 834-835.
Likewise, when faced with a distinctly similar situation in Davis v. Home Insurance Company, 291 So.2d 455 (La.App. 2 Cir.1974), the Second Circuit Court of Appeal looked to the Gautreaux decision for edification. In Davis, the plaintiff, an employee of the defendant, sustained injury to his back when he tripped while he was preparing to check out of the Alamo Plaza Motel in Shreveport following a three day trip to service his employer’s policyholders. Relying upon the Gautreaux precedent, the Second Circuit Court found that the | ¾ (preparation by an employee to leave his sales area and return to his home office was within the ambit of the holding of Gautreaux, and therefore found that the employee was within the course and scope of his employment at the time of the accident. Id. at 456.

A. LEON ROBINSON WAS EMPLOYED AS A TRAVELING SALESMAN WITH SIMMONS.

Mr. Robinson was employed as a sales representative for Simmons. His job duties obligated him to travel to and from New Orleans to service a four-state area to which he had been assigned by Simmons’ personnel. According to Danny Cantrell (“Mr.Cantrell”), Simmons’ Vice President of National Accounts, Mr. Robinson’s primary job responsibility was to “stay on the road and work.” Mr. Robinson’s office was “his motel, his car, his phone, his car phone, whatever.” His “sole job was to be on the road and living in hotels.” Likewise, Mr. Sumner, the decedent’s immediate supervisor, concurred with Mr. Cantrell that Mr. Robinson was normally to be on the road. On the weekend, Mr. Robinson was free to travel and do what he pleased. Given the testimony of both Mr. Cantrell and Mr. Sumner as to the nature and terms of Mr. Robinson’s employment with Simmons, we find that Mr. Robinson was employed as a traveling salesman.

B. LEON ROBINSON WAS KILLED WHILE IN THE COURSE AND SCOPE OF HIS EMPLOYMENT WITH SIMMONS.

In the case at bar, the Plaintiffs assert that Mr. Robinson left New Orleans en route to Chicago on October 14, 1996. When he arrived in Chicago, he went to the Simmons headquarters to drop off his previous week’s sales reports and to make copies of certain sales presentation materials that were vital to his Wisconsin Inbusiness trip. While at the Simmons headquarters, Mr. Sumner asked him to give an impromptu demonstration of the Wisconsin sales’ presentation. This lasted until 4:45 p.m. Afterwards, Mr. Robinson waited around the office for a few extra minutes to give co-worker, Sharon Smith (“Ms.Smith”), a ride home. The Plaintiffs insist that had Mr. Robinson not been asked to deliver the impromptu presentation, he would have been able to get an early start to Wisconsin — as early as 3:00 p.m.; nevertheless, he was detained until 6:00 p.m. — the time at which he dropped off Ms. Smith.
Next, the Plaintiffs maintain that rather than starting out on the road immediately *119 after dropping off Ms. Smith, Mr. Robinson decided to spend a few hours in his Chicago home relaxing and watching a ball game. They assert that the ball game ended at approximately 11:30 p.m., at which time Mr. Robinson changed into his business attire and began his five (5) or six (6) hour drive to Merrill, Wisconsin. He had with him all of his work materials, his work clothes, his toiletry bag, and everything else that he would need on this sales trip. Given this evidence, the Plaintiffs contend that every logical and reasonable conclusion suggests that Mr. Robinson was in the course and scope of his work, en route from Chicago to a sales meeting in Wisconsin, when he met his demise.
Simmons argues that the evidence unanimously suggest an alternative result. First, they insist that Mr. Robinson had no reason to be in Chicago on October 14, 1996 as his job duties simply did not require his presence at the office. They assert that Mr. Robinson possibly chose to fly into Chicago because he enjoyed checking on his property and visiting relatives and friends in the Chicago area. His 37-year-old-son, Darryl Lurks, and grandson both lived there. They also assert that on the day of his disappearance, Mr. Robinson did not make any sales calls, and that Mr. | ^Sumner was frustrated upon learning that Mr. Robinson was coming to Chicago first when his sales call was scheduled elsewhere.
Likewise, they contend that the Plaintiffs have offered nothing but sheer speculation that Mr. Robinson left his home in Chicago on the evening of October 14, 1996 to travel to Wisconsin, alleging that Mr. Robinson told three different people that he was leaving for Wisconsin on the morning of October 15, 1996. Moreover, they insist that the plaintiff has failed to establish a time and place relationship between the risk and the employment as required to show that the injury occurred in the course of the employment. As a result, Simmons proffers a two-part conclusion. First, that Mr. Robinson’s trip to Chicago was unwarranted as his job did not require his presence in the city, and secondly, Mr. Robinson disappeared while pursuing a personal mission late at night in Chicago. We disagree with these conclusions.
We find that on the day of his disappearance, Mr. Robinson went to Simmons headquarters for what we would describe as work related reasons: (1) to deliver his previous week’s sales reports and (2) to make copies of important product information. While at the office, he was asked to give an impromptu sales presentation. Despite the fact that he did not make any sales call that day, we find that Mr. Sumner’s request for an impromptu presentation would qualify as an act within the scope and course of Mr. Robinson’s employment. We find that any suggestions to the contrary by Simmons goes against all common sense. Similarly, in spite of Mr. Robinson’s decision to fly into Chicago when he could have flown directly into the state of his scheduled sales call, we opine that his supervisor, Mr. Sumner never informed him that he should do otherwise - more precisely — discontinue this practice. Thus, we find that on Monday, October 14, |131996, Mr. Robinson left his New Orleans’ home en route to Chicago as part of what had become his normal and seemingly acceptable Monday morning routine.
Moreover, we acknowledge that Mr. Robinson had family members, lots of close friends, and a residence in the Chicago area. However, after a thorough review of the record, we find that Mr. Robinson told his son some two weeks before this ill-fated trip that he would see him in Chicago; yet he never called to confirm the visit or to set up a time for the meeting once in the Chicago area. Therefore, we are not convinced by Simmons’ assertions that Mr. Robinson’s main purpose for flying into Chicago was anything but job-related. Likewise, we find no evidence that supports Simmons’ allegations that Mr. Robinson did not intend to travel to Wisconsin until October 15, 1996. However, upon a complete reexamination of the *120 record, we find evidence to the contrary. Ms. Valerie Bulliner, a Mend of Mr. Robinson, testified that he called her at approximately 10:30 p.m., and they spoke for about twenty (20) to thirty (30) minutes. At the end of the conversation, Mr. Robinson informed her that “he was going to get ready to go up to Janesville, Wisconsin.” Another Mend of the deceased, Ms. Linda Jones Farlow, also testified that he informed her on October 14, 1996 that “he had to go to Wisconsin.” We find the testimony of these two individuals reliable as we can foresee no reason why either would choose to lie under the circumstances. Additionally, we have found nothing more than unsubstantiated hearsay to suggest that Mr. Robinson’s agenda on the evening of October 14, 1996 was anything to the contrary.
Finally, we address Simmons’ argument as to- the connection between the risk and the employment that is necessary to show that the injury occurred in the course of the employment. Simmons promulgates that three factors must be_[^present to establish this relationship: (1) the time, place, and purpose of the act in relation to the service of the employer; (2) the relationship between the employee’s act and the employer’s business; and (3) the reasonable expectation of the employer that the employee would perform the act. Reed v. House of Decor, Inc., 468 So.2d 1159 (La.1985).
We find that Mr. Robinson has met each one of these factors. First, it has been established that Mr. Robinson was employed as a traveling salesman for Simmons. As a traveling salesman, he set his own hours and worked out of his office-car. His employer took care of his office-car and all additional travel expenses on a reimbursement basis. The last known person to speak with him, which was at approximately 11:00 p.m., stated that he was on his way to Wisconsin. It was common knowledge to both his supervisor and his family that he had a sales call in Merrill, Wisconsin on the following morning at 8:00 a.m. However, Mr. Robinson disappeared that evening and never made the meeting. His car was found weeks later. Mr. Robinson’s work materials, business suit, toiletry bag, and other items that he would have needed for his sales trip were found in his vehicle at the time. When his body was found almost two months later, Mr. Robinson was clad in what one would describe as business casual attire. We find that regardless of what Mr. Robinson may have done for relaxation earlier in the evening, the evidence clearly confirms that at the time of his disappearance, he was packed and en route to Wisconsin. We glean from the evidence, that at the time of his disappearance, Mr. Robinson was traveling from Chicago en route to a sales meeting in Wisconsin in the furtherance of his employer’s interest. Accordingly, we opine that a relationship between Mr.. Robinson’s activities and Simmons has been sufficiently established.
|1sNext, after meeting with Mr. Robinson at Simmons headquarters, Mr. Sumner was well aware that Mr. Robinson would be traveling to Wisconsin that evening to meet with Simmons’ customers the next day. As a result, we find that Simmons should have reasonably expected Mr. Robinson to be on the road that evening en route from Chicago to Wisconsin with all the materials, both professional and personal, as his job necessitated such action. The fact that Mr. Robinson opted to take a break after work and relax before getting on the road was his own prerogative and is not an issue before this Court. For the above reasons, we find that Mr. Robinson traveled to Chicago on October 14, 1996 for work-specific reasons. In Chicago, Mr. Robinson partook in activities at the request of his supervisor that were reasonably expected of a traveling salesman. At that time Mr. Sumner neither expressed any disapproval to Mr. Robinson about his travel practices, nor did he warn Mr. Robinson against flying into Chicago when he was scheduled to make service calls in a *121 different area. Moreover, we find that at the time of his disappearance, Mr. Robinson was en route to Wisconsin for an early morning sales call. Therefore, under the circumstances, Mr. Robinson’s trip to Chicago was of a business nature and warranted under the' circumstances.
Finally, Simmons has argued that the law does not impose blanket workers’ compensation coverage for every single incident merely because it involves a traveling salesman. Correspondingly, they have offered Yates v. Naylor Industrial Services, Inc., 569 So.2d 616 (La.App. 2 Cir.1990) in support of that contention. In Naylor, the court denied a claimant’s request for compensation benefits despite the fact that the accident occurred while the claimant was traveling to his home to pick up a duffel bag before reporting to his employer’s premises for an out-of-town job. The Second Circuit Court of Appeal flatly rejected the claimant’s contention |1fithat traveling was an integral part of the employment contract between the claimant and the employer and thus clearly in the furtherance of the employer’s interest, and that the claimant was at the place of the accident at the time it occurred because the necessities of the defendant’s service business reasonably required him to be there. Instead, the court of appeal held that the facts presented satisfied neither the “arising out of’ or “in the course of’ requirements. Moreover, they found that the facts fell squarely within the general rule that an employee traveling to and from work is not considered to be within the course and scope of his employment.
We agree with the holding in Naylor, as it pertains to cases involving ordinary employees who are injured in their travels to and from work. Notwithstanding Naylor’s holding, the Third Circuit Court of Appeal has clearly held in Gautreaiix, supra, that the general rule does not apply where the employee is a traveling salesman. Nor does the general rule apply where the employee is required to travel from place to place in the perfor-manee of his duties and to provide his own means of transportation in so doing. In such an instance there is no fixed place of employment, and the employee’s hours necessarily are irregular. Thus, if the employee sustains an injury while traveling under those circumstances, although he is not on the employer’s premises at the time of injury, his injuries will be considered as having been sustained in the course of his employment if: (1) he was engaged about his employer’s business at the time, and not merely pursuing his own business or pleasure; and (2) the necessities of his employer’s business required him to be at the place of the accident when it occurred. The Gautreaux decision has been widely accepted throughout the circuit courts of this state, and as a result, we find no reason not to rely upon it today.
|17In the present case, Mr. Robinson was employed as a traveling salesman for Simmons. He did not have a scheduled woik week or a “real” office. At the time that both his car and his body were found, he was clad in business attire, and his car was filled with his personal belongings and his work materials. We find that the evidence conclusively shows that Mr. Robinson was within the course and scope of his employment at that time of his disappearance, despite our lack of knowledge as to the precise location or exact second at which his death occurred. Simmons has not adequately rebutted the Plaintiffs’ burden of persuasion with anything more than unsubstantiated, circumstantial evidence as to Mr. Robinson’s whereabouts on the night of his disappearance. Therefore, after a thorough review of the record, we hold that the lower court judge did not err in holding in favor of the Plaintiffs.
C. THE TRIAL COURT WAS PROPER IN DENYING THE PLAINTIFFS’ PENALTIES AND ATTORNEYS’ FEES, AS SIMMONS’ REFUSAL TO PAY BENEFITS WAS NOT ARBITRARY AND CAPRICIOUS.
The Plaintiffs assert that Louisiana law mandates that a defendant in a work *122 ers’ compensation claim must investigate the claim prior to denial. If the defendant does not investigate, it is subject to penalties and attorneys’ fees. McClendon v. Keith Hutchinson Logging, 96-2373 (La.App. 1 Cir.1997), 702 So.2d 1164; Moore v. Popeye’s Fried Chicken, 96-1889 (La.App. 1 Cir. 6/20/97), 697 So.2d 5; Robinson v. Integrated Tank Services, Inc., 96-1080 (La.App. 5 Cir. 5/14/97), 695 So.2d 1009. The plaintiffs assert that Simmons’ wrongfully denied their request for benefits without even investigating the validity of their claim.
Simmons contends that where a reasonable basis exists for the denial of benefits, the employer cannot be arbitrary and capricious. Smith v. Martin Mills, Inc., 97-11 (La.App. 3 Cir. 5/21/97), 701 So.2d 680, writ denied, 97-1628 (La.10/3/97), 701 So.2d 207, citing Terro v. WMCO, Inc., 619 So.2d 639 (La.App. 3 Cir.1993). Where there are no witnesses to the incident and the time, place and circumstances surrounding the alleged incident are unknown despite diligent attempt to learn the truth, an employer’s failure to pay workers’ compensation benefits until after judgment is not arbitrary and capricious. Carter v. Bituminous Casualty Corp., 186 So.2d 180 (La.App. 3 Cir.1966). Accordingly, Simmons asserts that after several years of extensive police investigation into Mr. Robinson’s disappearance and murder, there is still no precise explanation as how this happened or who committed the murder. More importantly, Simmons contends that the most critical issue at trial was whether Mr. Robinson’s death qualified as a compensable accident under the Louisiana Workers’ Compensation Act. For these reasons, they state that their decision to await final judgment before paying out compensation benefits was not arbitrary and capricious. We agree.
We find that this case was filled with complicated and disputed theories of fact and law that could be interpreted in many different ways. We acknowledge that the question of whether or not Mr. Robinson’s death qualified as a compensa-ble accident did not present the most clear-cut answer. Therefore, we appreciate the difficult situation Simmons faced in determining whether or not benefits were warranted under this set of unique circumstances. Thus, given the uncertain nature of some of the events in this case, we find that Simmons was not arbitrary and capricious in their decision to await final judgment before disbursing benefits to the Plaintiffs.
| ^CONCLUSION
For the foregoing reasons, we affirm the ruling of the hearing officer.

AFFIRMED.