Howard Buettner, the son of plaintiffs, died from physical injuries sustained when an automobile which he was driving collided with another car on the evening of June 20, 1937, on a highway near Boutte, La. His parents allege that at the time of the accident their son was an employee of Polar Bar Ice Cream Co., Inc.; that they were dependent upon him; that the accident occurred in the course of and arose out of his employment, and that the business in which the said defendant was engaged and the work which their son was doing were hazardous and were among those listed as being within the protection of the Workmen's Compensation Laws of Louisiana. In their original petition they pray for judgment against the said corporation for $20 per week for three hundred weeks. In a supplemental petition they allege that Standard Surety Casualty Company of New York is the insurance carrier of the said Polar Bar Ice Cream Company and is, therefore, solidarily liable with the said corporation, and they pray for solidary judgment against the said insurer.
Defendants admit that plaintiffs' son died as a result of the accident to which plaintiffs refer, but deny that the said son was an employee of the first named corporation and aver, on the contrary, that he "was engaged in a business on his own behalf entirely separate and distinct from * * * respondents" and that the sole connection of the Polar Bar Ice Cream Company with the deceased was "that it sold to (him) products manufactured by defendant, Polar Bar Ice Cream Company, Incorporated, which products respondents are informed, were sold by said deceased Howard Buettner for his own account to such persons, in such places, and on such terms as he saw fit, respondent Polar Bar Ice Cream Company, Inc., having no control or direction over the action or activity of the deceased in retailing merchandise manufactured by respondent and sold by it to said Howard Buettner."
Respondents also deny that the deceased's earnings prior to his death were as great as alleged by plaintiffs, and they deny too that plaintiffs were dependent upon him.
There was judgment for plaintiffs against the two defendants solidarily for $11.99 per week for three hundred weeks and they have appealed suspensively. Plaintiffs have answered the appeal, praying that the amount of the judgment be increased to $20 per week.
The Polar Bar Ice Cream Company, Inc., manufactures ice-cream bars which usually retail at 5¢ each, and for some years prior to his death, Howard Buettner had "peddled" these bars and other confections to the retail trade. The principal question presented is whether he was an employee of that company or whether he merely bought the products of the company and sold them on his own account. Defendants maintain that Buettner was not an employee, *Page 488 
that he had developed a large trade in the territory in which he travelled and that to supply that trade, though he bought Polar Bars and candy made by the principal defendant, he purchased other candy and merchandise from others and retailed these articles as he saw fit.
Plaintiffs point out many things which they say indicate that as a matter of fact Buettner was an employee. In the first place, it seems clear that he was assigned a certain fixed territory within which he might sell the products of the principal defendant, and it is argued that to that extent Polar Bar Ice Cream Company had the right to control his route or his movements and that, where there exists the right to control these, the employee relationship exists. Of course it is true that where the right to direct or control exists, usually there is found this relationship, but the mere fact that a manufacturer or a wholesaler assigns to a peddler or to a retailer a certain territory and limits the sales of that peddler or retailer to that territory, does not of itself show that he is an employee. We think this is self-evident — a manufacturer or a wholesaler in the orderly conduct of its business might well contract with a retailer for the sale to the retailer of the product manufactured on condition that the retailer would sell only in a certain territory, and obviously this would not make the retailer an employee.
Plaintiffs then say that the Polar Bar Company could terminate Buettner's contract at any time and that this indicates that he might be discharged at any time, and from this it is said that he must have been an employee since the right to employ and to discharge is one of the elements of the employee relationship. Here again we say that the fact that a manufacturer or a wholesaler retains the right to discontinue selling to a retailer, does not justify the conclusion that the retailer is an employee.
There are other facts, possibly no one of which would, of itself, prove that the claim of plaintiffs that Buettner was an employee is well founded but all of which when taken together may be considered of sufficient weight to have that effect. We will discuss them.
On the night of the accident, Mr. Russell, the president of the Polar Bar Ice Cream Company, was called to the office of the Louisiana Highway Police and, according to Officer Rafferty, who was in charge of that office, Russell said that "the boy was working for me at the time" and Russell also claimed as his the money which was found on Buettner and which was apparently the proceeds of that day's sales by Buettner. This money was given to Russell. Defendants attempt to overcome the effect of this by saying that Buettner was indebted to the Polar Bar Ice Cream Company and that Russell was taking care of the burial expense because "the people was in poor circumstances" and that this money would offset a part of that expense.
Another fact pointed to by plaintiffs involves the automobile which Buettner was driving at the time. Defendants claim that it belonged to Buettner, whereas plaintiffs say that the Polar Bar Company owned it. It had only recently been purchased in Buettner's name. In making the down or first payment, he had given to the vendor $69.17 represented by a check of the Polar Bar Company and had also "traded" an old automobile of that company for which an allowance of $150 was given. Defendants explain this by saying that of the $69.17 Buettner had $50 on deposit with the company and gave the company $19.17 in exchange for the company's check for $69.17, which was made payable to the vendor of the truck. And defendants further show that for the value of the said car Buettner "traded" he gave to the Polar Bar Company a note evidencing his indebtedness in the sum of $150. This explanation of the transaction involving the automobile would be entitled to more weight were it not for the fact that after the accident the company on its own books made a "debit entry" showing a loss "by wreckage and accident", amounting to $356.16. This was the extent of the damage caused to that truck in that accident.
Plaintiffs also show that the company paid the bill for the funeral of their son in the sum of $121.08 and counsel argue that this would not have been done had he not been an employee. Russell, the President, explains that Buettner was a very good worker and that he was very fond of him, and that he intended to pay the funeral bill personally, purely because of his feelings towards the boy. He says that he told the bookkeeper to charge the amount to him, personally, but apparently the bookkeeper forgot to do this. It is further *Page 489 
shown that on another occasion the company had paid for the funeral of another person who was obviously not an employee but who, as a retailer, sold the company's products.
It was shown that the sides of the truck were in process of being painted with advertising matter showing that it was being used to sell products of the Polar Bar Company. But this does not show necessarily that the truck belonged to the company or that Buettner was an employee. He was making his living selling that particular product and, of course, was interested in giving to that product all possible publicity. He would have been interested whether he was an employee or a retailer selling on his own account.
During the strawberry season each year Buettner worked out of Hammond, which is in the center of the Louisiana strawberry belt. During that season a large quantity of the company's products are sold out of the Hammond office. During the strawberry season the company employed as its Hammond manager, a Mr. Delagarza who says that he personally had an arrangement with Buettner under which the latter, in addition to his own selling activities, helped check the sales to and remittances from the other persons through whom the company sold its products. Mr. Delagarza says that Buettner in doing this was not an employee of the company but worked for him personally, and that as compensation he, Delagarza, allowed out of his commissions an additional discount to Buettner on all products bought by him for his own trade.
It is shown too that on some occasions Buettner made collections for the company and his books show many entries which Mr. Russell could not satisfactorily explain. It appears from these books that during the month of May, which was the month preceding that in which Buettner was killed, Buettner had kept what seems to be a very complete record showing the names of all the peddlers, the quantities of merchandise taken out by them, the quantities returned and the amount of cash apparently which each remitted. These records also show the expenses apparently of Buettner for each particular day. They show the deductions of these expenses from the total collections for the day and show "cash sent in" on each day. Mr. Russell admitted that apparently many of these entries were made in the handwriting of Buettner, and he did not deny that those entries which were made in print, that is to say in pencil or ink, but with what may be called printed letters, might also have been made by Buettner. He admitted that apparently this record showed Buettner's activities concerning peddlers, collections from them and remittances to the company.
Each of these facts tends to show that Buettner was an employee and not an independent retail dealer. As we have said, probably no one or two of them would have been sufficient but taken together they are sufficient to justify the conclusion reached below that in truth Buettner was an employee.
Most of the cases cited by plaintiffs as establishing the doctrine that the Compensation Statute should be liberally extended so as to afford protection unless the defendant shows clearly that the person injured or killed was not an employee present facts under which the person injured or killed was either an independent contractor or an employee. Here there is in reality no claim by defendants that Buettner was an independent contractor. An independent contractor under subsection 8 of Sec. 3 of Act No. 85 of 1926, p. 113, which amends Act No. 20 of 1914, is "any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished." An independent contractor does work for the other person or principal but retains control of his work, the principal having only the right to demand a certain result; whereas an employee may do the same work but is subject to control in the means by which the work is done. Here, however, if defendants are correct, Buettner was not an independent contractor; he was completely independent; he was not doing work for a principal; he was selling for his own account and the other party was not interested at all except to the extent of the sale of its wares.
If the question involved was whether Buettner was an employee or an independent contractor, then the act would be liberally construed in favor of the plaintiffs and the burden would be on the defendants, claiming that he was an independent *Page 490 
contractor, to show this. See Dick v. Gravel Logging Co., Inc.,152 La. 993, 95 So. 99; Marquez v. Le Blanc et al., La.App., 143 So. 108; Nesmith v. Reich Bros. et al., 203 La. 928,14 So.2d 767. We doubt that the burden is placed on defendants sued under the Compensation Act to show that there was no employee relationship of any kind. But wherever the original burden may have rested, we think that under the many facts shown here the duty of overcoming the effect of these facts has, to say the least, been shifted to defendants, if it was not on them originally, and we feel that they have not successfully done this.
Evidently our brother of the District Court felt that the facts which appear in this record are sufficient to justify the conclusion that Buettner was an employee. We cannot say that he was in error; on the contrary, we think the facts warrant that conclusion.
When we come to consider whether the plaintiffs, mother and father of the deceased, were dependent upon him, we find little evidence. Such as there is in the record however shows that though they are now receiving a very small monthly "relief" allowance, at the time of the accident they had practically no other income than that contributed by their son. He did not live in the same apartment in which they lived but did live in the same building and about the only income they received was the very small amount contributed by him. It is proper to say that they were dependent upon him.
In the record there is a stipulation to the effect that during the four weeks preceding the death of Buettner, the profits from his sale of ice-cream bars amounted to an average of $18.43 per week. 65% of this amounts to $11.98 and this is what plaintiffs are entitled to each week. Our brother below allowed $11.99 per week. The difference is so small that while we will correct it, we think it should have no effect on the payment of costs. De minimis non curat lex.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is amended by the reduction of each weekly payment from $11.99 to $11.98. As thus amended, the judgment is affirmed at the cost of appellants.
Amended and affirmed.