94 So.2d 489 (1957)
Mrs. Lula Wales SHELTON, Plaintiff-Appellee,
v.
BARBER BROTHERS COMPANY, Defendant-Appellee
(J. C. Borskey, Defendant in Warranty and Appellant).
No. 4374.
Court of Appeal of Louisiana, First Circuit.
March 25, 1957.
Rehearing Denied May 2, 1957.
Jos A. Gladney, Baton Rouge, for appellant.
Hynes, Mathews & Lane, Baton Rouge, for appellee.
TATE, Judge.
The sole remaining question on appeal is whether the District Court correctly *490 required J. C. Borskey, defendant in warranty and sole appellant, to indemnify Barber Brothers, the original defendant and now appellee, for workmen's compensation benefits awarded the dependents of Albert Otis Shelton. Borskey was held to be a subcontractor of Barber Brothers; and as such properly called in warranty to indemnify his principal contractor for its compensation liability resulting from accidental injury to Borskey's employee in the course of fulfilling the contract, LSA-R.S. 23:1061, 23:1063.
While working on October 18, 1954, Shelton fell from a high tree and was killed. He had been employed by Borskey for approximately a year in the latter's "tree service" business. A week or so before the tragic accident Borskey and Barber Brothers, a construction firm, had entered into an agreement whereby Borskey was to "top" or delimb three large trees which it was necessary for Barber to remove in connection with construction of a storm sewerage system. The agreed price was $150 per tree, or $450 in all. Borskey furnished his employees (2-4) and equipment (trucks, saws, axes, and ropes). There was apparently no specific time limit set for completion of the project, although it was contemplated by both parties that work should start at once. Shelton was killed while Borskey's crew was working on the third, or last, large tree.
As stated, the sole question before us is: was Borskey an independent contractor, or was he an employee of Barber Brothers? Of course, if the latter, he is not called upon to indemnify Barber Brothers for the compensation liability resulting from Shelton's death.
As contrasted to an employee, an independent contractor is one independent in business who contracts to perform a specified piece of work for another for a specified price, without being subject in the performance of the contract to the control and direction of his employer except as to the result contracted for; which contract is not subject to termination or discontinuance at the will of either party without a corresponding liability for its breach. Amyx v. Henry & Hall, 227 La. 364, 79 So. 2d 483. In the cited case's comprehensive summary of the distinction between the relationships, our Supreme Court through Mr. Justice Simon remarked that "the most important test * * * is the control over the work which is reserved by the employer", 79 So.2d 486; concluding that the right of control, rather than the actual control exercised, was the important criterion.
Able counsel for Borskey correctly points out that the relationship may be that of employer-employee even though the employee furnishes the truck and other equipment, hires and pays sub-employees of his crew, and is paid on a piecework basis (which are more often indicia of the principal-contractor relationship), relying upon Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483, Herbert v. Gates, La.App. 1 Cir., 50 So.2d 859, Deason v. Coal Operators Cas. Co., La.App. 2 Cir., 43 So.2d 630, Collins v. Smith, La.App. 2 Cir., 13 So.2d 72; providing that the right to control is retained by the employer. But these cases relied upon are distinguishable from the present, for in them the employees were retained, to haul gravel at so much per yard or to cut wood at so much per cord or per tie, for no specified period or for no specified amount of work; and the opinions remarked the degree of supervision of the employees in their performance of the contract and the legal right of the employer to terminate the relationship at his will at any time, the latter an important indicium of the right of control.
As these cases show, the indicia that point to the independence of the subcontractor and the indicia that point to the control over the employee are often intermingled as to a given practical relationship. Often, the relationship was confected by laymen informally and orally, without regard to its legal classification as that of principal-contractor or as that of employer-employee. *491 Sometimes for business reasons one party or the other with intention aforethought has attempted to disguise by documents or actions what actually is one of the relationships as the other. When subsequently it becomes legally consequential whether the given relationship is that of principal-contractor or that of employer-employee, the courts are required to piece from all the indiciasometimes to pierce some dissembling data to obtainthe total picture of the practical working relationship, and to deduce therefrom the ultimate conclusion of either the true independence of the subcontractor or the actual control over the employee.
In the present case, however, most of the indicia point to the independence of Borskey as a subcontractor, and the District Court correctly held him to be such. Borskey contracted to delimb three trees and to cut and haul the limbs away for $450. He used his own regular force, equipment, and his own working methods. In our opinion, neither he nor Barber Brothers had the legal right to terminate the legal relationship at will.
The Barber Brothers' superintendent with whom Borskey had confected the contract had initially shown Borskey the approximate height to which each tree was to be cut, following which he and Borskey reached agreement as to the price of $450. (After the tree was topped and delimbed, then Barber Brothers removed by bulldozer the remainder of the trunk and the roots.) After each of the large trees was cut during execution of the contract, in Borskey's words, the superintendent "had to accept it as being cut down to at the point that he wanted it," Tr-187. Under the circumstances of this case, this was not (as argued) supervision during the performance of the contract, but simply a final inspection, before acceptance as the result contracted for.
Likewise we are unable to accede to the arguments of counsel for Borskey that supervision and control are indicated by the actions of the Barber Brothers' superintendent: in persuading the power company to remove a power line passing through one of the trees to be delimbed; in showing Borskey's employees at the outset where they should dump all the limbs Borskey had contracted to cut and haul away; and in placing out traffic barriers to protect passing traffic while Borskey's employees were cutting down the trees. These actions are perfectly consistent with the concern of a principal contractor to assist, not to supervise, his subcontractor; and Borskey himself testified that removal of the power lines was supposed to be done through Barber, and was not part of the work he contracted to have done.
The deceased employee was killed just after work had commenced on the third and last tree. When Borskey and his crew returned a few days later to complete the contract, he and his employees testified that the Barber Brothers superintendent told them he didn't want them to finish topping the last tree; and they left. The superintendent controverts this testimony, stating that the contract was terminated by mutual consent. (A day later Borskey did accept $25 in full payment for the work performed in partially delimbing the last tree.)
But assuming the most favorable view possible to Borskey's case, the evidence simply indicates that Barber Brothers terminated the contract, not that it had a legal right to do so. (Barber's reluctance to continue with Borskey's services can be explained from the record as based upon its discoverydespite its contrary impression that Borskey did not carry compensation insurance.)
Borskey himself could have terminated the contract by stopping work after cutting the first tree; but this would not prove his legal right to do so. The legal right to terminate at will may be a significant indication of the right of ultimate control; an illegal termination actionable for breach, *492 or a termination by mutual consent, of a truly binding contract has no such significance.
There being no error, the judgment of the District Court is affirmed.
Affirmed.