272 So.2d 739 (1972)
Winnie Love SONES, Plaintiff-Appellant,
v.
MUTUAL OF OMAHA INSURANCE COMPANY et al., Defendants-Appellees.
No. 11877.
Court of Appeal of Louisiana, Second Circuit.
June 27, 1972.
On Rehearing January 9, 1973.
Writ Refused February 19, 1973.
*740 Jones, Blackwell, Chambliss, Hobbs & Henry, by Jasper E. Jones, West Monroe, for plaintiff-appellant.
Theus, Grisham, Davis & Leigh, by J. C. Theus, Monroe, for defendants-appellees.
Before AYRES, HEARD and HALL, JJ.
HALL, Judge.
Wiley T. Sones, an insurance salesman, died as a result of injuries sustained by him in an automobile accident. His surviving spouse and sole dependent filed this suit for workmen's compensation benefits against his alleged employers, Mutual of Omaha Insurance Company and United Benefit Life Insurance Company, and their workmen's compensation insurer, Employers Commercial Union Insurance Company of America.
The district court found Sones was an independent insurance agent for Mutual of Omaha and United Benefit and that he was not an employee of the companies within the meaning of the workmen's compensation statute, LSA-R.S. 23:1021 et seq. The demands of plaintiff were rejected and she perfected this appeal.
The primary issue presented by the appeal is whether Sones was an employee of the defendant companies within the meaning and coverage of the workmen's compensation act. If Sones was an employee covered by the act, then a secondary issue is presented as to whether the accident occurred in the course of his employment. We resolve both issues favorably to the plaintiff, reverse the judgment of the district court, and award workmen's compensation benefits to the widow.
For more than twenty-five years prior to his death at seventy-eight years of age, Sones worked regularly and exclusively as an insurance agent for defendant Mutual of Omaha and its wholly owned subsidiary United Benefit, working out of the Monroe office operated by Claude Gilliland, defendant's Monroe Division Manager.
Sones did not have a written contract with defendants but the other agents in the Monroe Division Office had written contracts reflecting the terms and conditions of their arrangement with defendants. It was stipulated that Sones rendered his services to defendants on the same terms and conditions as are reflected in the contracts between defendants and the other agents.
The contracts provide that the agent is appointed to procure applications for *741 health and accident insurance for Mutual of Omaha and life insurance for United Benefit, and to collect premiums thereon, in the Division Manager's territory consisting of twelve parishes. The contracts require the agent to submit all applications and cash for first premiums, with the company having the right to reject any application and with the agent having no authority to incur any liability on behalf of the company. The contracts provide for the agent to receive certain percentage commissions on first and renewal premiums as full compensation for all expenses and services of the agent. The five per cent commission on renewal premiums is variously described as a collection service fee and as being in consideration of the agent's faithful performance of the contract and keeping the business written in force. The right of the agent to receive renewal commissions is made contingent on the continuance of the contract between the company and the agent. In the Mutual of Omaha contract the renewal commission is also contingent upon the agent having twenty-five active policies in force and production by the agent of a minimum of twelve paid for and issued policies each month. In the United Benefit contract, the renewal commission is contingent upon the agent writing at least $50,000 of new insurance during any calendar year.
The agreements may be terminated by either party without further liability on the part of either. The contracts provide that they shall not be construed to create the relation of employer and employee between the company and the agent and that the agent shall be free to exercise his own judgment as to the persons from whom he will solicit and the time and place, manner and amount of solicitation.
The evidence discloses that the Division Manager furnished an office for the several agents working under him. Specific desk space and drawers were assigned to and used by Sones and the other agents. Sones, along with the other agents, reported to work at the Monroe Division Office almost every morning before going out to solicit business. The matters attended to by the agents at the office included turning in policy applications and premiums collected, going over policy applications with the Division Manager or other employees to be certain they were properly prepared, receiving instructions from the Division Manager concerning any new underwriting rules or types of policies, receiving any communications mailed or phoned in by policyholders or prospects, receiving claim drafts or newly issued policies that the agent might want to personally deliver to the policyholders, maintaining the agent's record books of sales, commissions, prospects, etc., picking up the agent's monthly check for renewal and collection service fee commissions, receiving information as to past due and unpaid premiums, and receiving blank policy applications, brochures, etc. On some occasions, Sones would go hunting or take a personal trip out of town and not report to the office. It was not necessary for him to obtain permission to do this, but he often advised the Division Manager of his plans. The evidence is clear, however, that he reported to work most mornings.
After concluding their morning duties at the office, the agents proceeded into the twelve-parish area to make solicitations using their own automobiles furnished by the agents with no reimbursement by the companies for automobile expense. The evidence discloses that the Division Manager exercised little or no direct control over the agents' solicitation activities. Occasionally, he accompanied an agent to assist the agent in selling or in handling a complaint. From time to time, he furnished the agents with the names of prospects who called into the office.
It is to be noted that the Division Manager was himself compensated by the companies on a commission basis out of which he paid the expenses of the office and the agents' commissions.
The evidence discloses that during 1969, Sones was paid a total of approximately *742 $4,900 in commission of which $1,200 was commission on new sales and $3,700 represented renewal commission. In 1970, to the time of his death in October, Sones had received approximately $5,500 in commission of which $1,300 represented commission on new sales and $4,200 represented commission on renewal premiums.
The evidence further reflects that Sones and the other agents were not carried on the payrolls of the companies or their Division Manager and that no federal or state taxes were withheld from the commissions paid to the agents. The agents were not provided with any fringe benefits such as hospitalization or retirement. While the workmen's compensation insurance policy carried by the defendant companies provides coverage to all employees of the companies, only the clerical employees and not the agents were considered for purposes of computing the premium paid to the compensation insurer.
Defendants urge and the trial court so held that plaintiff was an "independent agent" or "non-servant agent". In support of their position, defendants emphasize that little or no control was exercised over plaintiff in the method or manner of his solicitation activities; he was not required to work any certain hours; that he was free to solicit anywhere within the entire territory of the district manager; he was not carried on defendants' payrolls and did not receive any fringe benefits such as retirement and hospitalization; he was individually licensed by the state as an insurance agent; he furnished his own automobile and paid his own expenses; he was paid on a commission basis; and his agreement with defendants (stipulated to be the same as the written agreements with other agents) provided he was not to be considered an employee and stipulated against control of his sales activities.
On the other hand, plaintiff urges that Sones was an employee of defendants for purposes of workmen's compensation. Factors indicating an employer-employee relationship emphasized by plaintiff are: the total economic relationship between the parties; Sones' employment could be terminated by either party at any time without any further liability on either party; Sones rendered his services exclusively for defendants for a long number of years and did not offer his services to others; minimum sales and performance standards were established in order for Sones to receive the major part of his compensation which was based on renewal commissions; an office was furnished by defendants for Sones' use; and Sones did, in fact, report for work at the office almost every morning. Plaintiff cites Buettner v. Polar Bar Ice Cream Co., 17 So.2d 486 (La.App.Orl. Cir. 1944); O'Connor v. American Mutual Liability Ins. Co., 87 So.2d 16 (La.App. Orl.Cir. 1956); Samson v. Borden Company, 92 So.2d 152 (La.App. 1st Cir. 1957); Gresham v. Speights, 133 So.2d 846 (La. App. 2d Cir. 1961), as cases in which commission salesmen were held to be employees covered by the workmen's compensation act.
No general test can be set forth as determinative of the issue involved in this case. Each case must be decided on its own particular facts, taking into consideration the total economic relationship between the parties and the various factors weighing either in favor of or against an employer-employee relationship. On balance, readily conceding that this case presents a close question for decision, we find that the indicia weigh in favor of an employer-employee relationship for purposes of workmen's compensation.
The Louisiana Workmen's Compensation Act does not define employee. It does, however, define an independent contractor (who is excluded from coverage of the Act except where he performs substantial manual labor) as "any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his *743 work only, and not as to the means by which such result is accomplished,...". LSA-R.S. 23:1021. In Gresham v. Speights, supra, this court approved the definition pronounced in Shelton v. Barber Brothers Company, 94 So.2d 489 (La.App. 1st Cir. 1951) of the distinction between an employee and an independent contractor as follows:
"As contrasted to an employee, an independent contractor is one independent in business who contracts to perform a specified piece of work for another for a specified price, without being subject in the performance of the contract to the control and direction of his employer except as to the result contracted for; which contract is not subject to termination or discontinuance at the will of either party without a corresponding liability for its breach."
Under the statutory definition, as explained in Shelton and Gresham, Sones cannot be considered an independent contractor. He did not contract for a specified piece of work or result for a specified price or recompense. He was not one independent in business in that he had a continuing, exclusive relationship with the defendants. His employment was subject to termination at the will of either party without a corresponding liability on the part of either.
While defendants use the term "independent agent", their argument, basically, is that Sones was an independent contractor as distinguished from an employee. Having found that Sones' employment does not come within the definition of independent contractor, the presumption is that he was an employee. R.S. 23:1044 provides:
"A person rendering service for another in any trades, businesses or occupations covered by this Chapter is presumed to be an employee under this Chapter. * * *"
The cases cited by plaintiff support her position that the decedent was an employee covered by the workmen's compensation act. Gresham v. Speights, supra, is closely in point. Plaintiff there was a commission used car salesman. He had no fixed hours of employment, he was not directed by his employer in every detail in his efforts to sell used cars, he could come and go as he pleased. In determining that plaintiff was an employee and not an independent contractor, this court emphasized as significant factors that plaintiff was subject to such control as the employer might wish to exercise, his employment could be terminated at will by either party, and he was not required to perform any specified work at a specified price with exclusive respect as to the result thereof. The court further held:
". . . Additionally, the jurisprudence of our State abundantly establishes the proposition that commission salesmen are regarded as employees and not independent contractors or enterprisers. Somewhat recent pronouncements on this point are found in O'Connor v. American Mutual Liability Ins. Co., La.App. Orleans, 1956, 87 So.2d 16, and Samson v. Borden Company, La.App. First Circuit, 1957, 92 So.2d 152.* * *"
The Buettner, O'Connor and Samson cases all involved determinations of whether certain salesmen were employees or were independent merchants retailing products purchased from the companies whose products they sold. Although these cases did not involve an employee versus independent contractor or agent determination, the indicia taken into account determining the status of the salesmen as employees were substantially the same. All of these cases involve the same basic inquiryconsidering the total relationship of the parties, is the status of the salesman that of an employee or that of an independent enterpriser?
Our decision that Sones was an employee within the provisions of the workmen's compensation statute is based on a consideration of the total relationship between *744 him and the defendant companies. Admittedly, actual control or even the right to control his physical activities was minimal. On the other hand, economic control was substantial. We attach particular importance to the facts that his services were rendered to the companies on a continuing, exclusive basis and that the nature of his servicesselling insurance was an integral part of the companies' regular and basic business which necessarily must be accomplished through persons regularly doing this work. We do not choose to label this approach to the problem, but it probably comes close to the "relative nature-of-the-work test" described in Larsen's Workmen's Compensation Law, Sections 43, 50, et seq.
Defendants place considerable emphasis on the provisions of the written agreements with the agents (stipulated to be applicable to Sones) expressly negating an employer-employee relationship. While this is one factor to be considered in determining the status of the person performing services, it is not of itself conclusive.
For purposes of determining the applicability of the workmen's compensation statute, the court must inquire into the true nature and character of the relationship based on the actual facts regardless of how the parties may have characterized themselves. Murphy v. Tremont Lumber Co., 22 So.2d 79 (La.App. 2d Cir. 1945). See: Malone, Louisiana Workmen's Compensation Law and Practice, Section 81.
Defendants further contend that Sones was a "non-servant agent", citing Ocmond v. Eserman, 259 So.2d 600 (La.App. 4th Cir. 1972) and Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968). Both of these cases involved vicarious tort liability of alleged employers for the physical acts of their alleged employees. In Blanchard, the court held a free-lance "bird dog" used car salesman was not an employee but was a non-servant agent of his principal. In Ocmond, the court reached the same conclusion as to a Stanley Home Products salesman or dealer. While a consideration of whether a master-servant relationship exists for purposes of vicarious tort liability involves consideration of the same indicia involved in determining the status of a claimant under the workmen's compensation act, the ultimate criteria and result need not be the same, in view of the purpose of and liberal construction given to the compensation statute. These cases are also distinguishable from the instant case on their factsdegree of control or right to control, relative nature of the work, total economic relationship, and other indicia.
Having concluded that Sones was an employee of defendants within the coverage of the workmen's compensation statute, we next consider the issue of whether the accident occurred during the course of his employment.
On the morning of the accident, Sones dressed in his suit and tie as was his custom on a working day. He told his wife he was going to work and left for the office about 8:15 a.m. While there he picked up a commission check that was due him. He subsequently left the office in his automobile. The accident occurred at an intersection about two blocks from the office. Every indication is that Sones left the office for the purpose of going out to solicit business for his employer in his usual and customary manner. There is no evidence to the contrary. We hold the accident arose out of and in the course of the decedent's employment. See: DeMaggio v. United Mills Corporation, 252 So.2d 530 (La.App. 4th Cir. 1971); Green v. Heard Motor Co., 224 La. 1078, 71 So.2d 849 (1954); Barnett v. Walther Bros. Co., 59 So.2d 487 (La.App.Orl.1952); Johnson v. Wallace Industrial Constructors, 224 So.2d 31 (La.App. 1st Cir. 1969).
Plaintiff prayed for penalties and reasonable attorney's fees. Defendants' refusal to pay benefits and to defend this *745 suit involving a very close question of law was reasonable and was not arbitrary or capricious. Plaintiff's demands for penalties and attorney's fees are rejected.
The record establishes that Sones earned an average weekly wage of $103.56, entitling his widow to death benefits of 32½% of that amount, or $33.66 per week. LSA-R.S. 23:1231, 1232. Plaintiff is also entitled to recover medical expenses stipulated to be $1,962.30. LSA-R.S. 23:1203. Burial expenses were stipulated to be $1,900, of which plaintiff is entitled to judgment for the statutory maximum of $1,000. LSA-R.S. 23:1210.
For the reasons assigned, the judgment of the district court is reversed and it is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Winnie Love Sones, and against defendants, Mutual of Omaha Insurance Company, United Benefit Life Insurance Company and Employers Commercial Union Insurance Company of America, in solido, for workmen's compensation death benefits in the amount of $33.66 per week commencing October 23, 1970, and continuing for a period of 500 weeks, with interest at the rate of 7% per annum on each weekly installment from its due date until paid; and in the amounts of $1,962.30 for medical expenses and $1,000 for burial expenses, together with interest at the rate of 7% per annum on said amounts from date of judicial demand until paid; and for all costs of this proceeding, including the cost of appeal. The demands of plaintiff for penalties and attorney's fees are rejected.
Reversed and rendered.

ON REHEARING
Before AYRES, BOLIN, PRICE, HEARD and HALL, J J.
AYRES, Judge.
On the earnest insistence of defendants' late eminent counsel, the court granted a rehearing to afford us another opportunity to review the record and to reconsider our original opinion.
In defendants' motion for a rehearing, it is contended the court erred:
1. In holding that the relationship of employer-employee or master and servant existed between Wiley T. Sones and Mutual of Omaha Insurance Company and United Benefit Life Insurance Company of America; and
2. In holding that the accident sustained by Sones arose out of and in the course and scope of his employment with defendants.
In this case, as is the custom in this court with respect to all rehearings, this case was reargued before and submitted to the court en banc for a decision.
We have reviewed and reconsidered the entire record, including counsel's oral arguments and written briefs, particularly with reference to the points stressed and enumerated above. We are convinced, upon our reconsideration of the record, that our original opinion accurately detailed the pertinent facts and applied the appropriate law. No further expansion of the opinion on either law or facts is deemed necessary.
Accordingly, for the reasons herein and as initially assigned, our original decree is reinstated and made the final judgment of this court.
Judgment reinstated.