291 So.2d 455 (1974)
Stanley R. DAVIS, Plaintiff-Appellant,
v.
The HOME INSURANCE COMPANY et al., Defendants-Appellees.
No. 12199.
Court of Appeal of Louisiana, Second Circuit.
January 8, 1974.
Rehearing Denied February 12, 1974.
*456 McKinley, Dimos & Brown by Donald R. Brown, Monroe, for plaintiff-appellant.
Lunn, Irion, Switzer, Johnson and Salley by Jack E. Carlisle, Jr., Shreveport, for defendants-appellees.
Before BOLIN, PRICE and HALL, JJ.
PRICE, Judge.
Stanley R. Davis, an insurance sales representative of Investors Preferred Life Insurance Company, brought this action against Investors and its insurer, The Home Insurance Company, seeking benefits under the workmen's compensation statute for a total and permanent disability alleged to have resulted from an accidental injury sustained by Davis while in the course of employment with Investors.
Investors and Home Insurance deny liability, contending Davis was an independent contractor rather than an employee of Investors and therefore not entitled to benefits under the statute. They further deny the occurrence of the accident alleged to have caused the injury to Davis, or that he was engaged in the performance of any duties connected with his agency relationship with Investors at the time the alleged accident happened.
Davis has appealed from the judgment of the trial court rejecting his demands.
Davis was an agent for Investors engaged in selling group accident policies to businesses and institutions in Louisiana and southern Arkansas. As his home was in El Dorado, Arkansas, he customarily drove his own automobile to points in Louisiana and Arkansas, and on occasions remained away from home overnight in the performance of his work.
Plaintiff contends that on April 10, 1970, while preparing to check out of a motel, following a three day stay in Shreveport to service policyholders of Investors in that city, he tripped as he stepped from the threshold of his room and injured his back.
In his reasons for rejecting plaintiff's demands for compensation benefits, the trial judge concluded Davis had not proven his relationship with Investors was that of "employer-employee" instead of "principal and independent contractor." Nor did the court find Davis had proven his accident happened while in the course or scope of his employment.
We find the trial court erred in its conclusion and are of the opinion plaintiff is entitled to compensation benefits for the reasons set forth hereinafter.
Relationship of Davis to Investors Employee or Independent Contractor.
This court in the recent case of Sones v. Mutual of Omaha Insurance Company, 272 So.2d 739 (La.App. 2d Cir. 1972), had occasion to resolve the status of a commission insurance agent for the purpose of determining coverage under the workmen's compensation *457 statute. After an exhaustive review of the prior decisions on this issue in the Sones case, the commission insurance agent was held to be an employee. In resolving this issue in Sones, factors considered of primary importance in making the determination are as follows:
"Under the statutory definition, as explained in Shelton [Shelton v. Barber Brothers Company, 94 So.2d 489 (La. App.)] and Gresham [Gresham v. Speights, 133 So.2d 846 (La.App.)] Sones cannot be considered an independent contractor. He did not contract for a specified piece of work or result for a specified price or recompense. He was not one independent in business in that he had a continuing, exclusive relationship with the defendants. His employment was subject to termination at the will of either party without a corresponding liability on the part of either.
"While defendants use the term `independent agent', their argument, basically, is that Sones was an independent contractor as distinguished from an employee. Having found that Sones' employment does not come within the definition of independent contractor, the presumption is that he was an employee. R.S. 23:1044 provides:
`A person rendering service for another in any trades, businesses or occupations covered by this Chapter is presumed to be an employee under this Chapter. * * *'

* * * * * *
"Our decision that Sones was an employee within the provisions of the workmen's compensation statute is based on a consideration of the total relationship between him and the defendant companies. Admittedly, actual control or even the right to control his physical activities was minimal. On the other hand, economic control was substantial. We attach particular importance to the facts that his services were rendered to the companies on a continuing, exclusive basis and that the nature of his services selling insurancewas an integral part of the companies' regular and basic business which necessarily must be accomplished through persons regularly doing this work. We do not choose to label this approach to the problem, but it probably comes close to the `relative nature-of-the-work test' described in Larsen's Workmen's Compensation Law, Sections 43, 50, et seq."
Davis had represented Investors or their predecessor company for a period of approximately eight years prior to his accident. Although he had a written contract with Investors obligating him to represent them exclusively, this provision was not followed and Davis did have licenses to sell policies of a non-competitive nature with other companies. The evidence shows his commissions earned with the other companies to have been so negligible that for all practicable purposes he worked exclusively for Investors. Average commissions paid to Davis by Investors ran approximately $5,000 annually, whereas his total sale of occasional hospitalization policies for other companies amounted to only $300 to $400 per year.
The stipulation in Davis' contract describing his status as an independent contractor is not conclusive. A similar argument was rejected by this court in Sones.
The true nature of the relationship for purposes of coverage under the workmen's compensation statute must be determined by an evaluation of all facts and circumstances and not entirely from a contractual characterization of the status.
We find most of the factors on which the court in Sones relied to hold the agent was an employee to be present in this case. Davis had authority to solicit applications for group policies and if accepted by Investors, he was paid a commission on initial premiums and a percentage on renewals for what is described in the written contract as a "persistency allowance" for *458 compensation for the servicing of the policies sold by him. The contract requires him to produce a minimum of $2,500 in new premiums each year to entitle him to renewal commissions. The agreement is subject to termination by either party after thirty days notice without liability.
The degree of control over the activities of Davis by Investors is a fact in dispute. Davis testified he and other agents were required to prepare a daily log of contacts made with prospects who were receptive enough to listen to a sales presentation and file it with the home office of Investors at the end of each week. Davis further testified he was expected to render liaison services between the company and the policyholders in his territory. Although this factor is disputed by Investors, the weight of the evidence favors Davis' testimony. He introduced a number of samples of written communications from the company office requesting him to contact various group policyholders to straighten out problems or misunderstandings in premium receipts, claim payments, etc.
There are certain factors involved in the instant case not present in Sones which favor the plaintiff's position. Davis was included on a group employee hospitalization policy issued to Investors by the Aetna Insurance Company. Social security payments were withheld from the commission payments to Davis. There is also testimony that in sales instructional meetings the agents were told they were expected to make a minimum number of calls per day and to devote at least 40 hours per week in pursuit of applications.
We are of the opinion the evidence presented by plaintiff brings him within the scope of our holding in Sones and he was an employee of Investors for purposes of coverage under the compensation statute.
Sufficiency of Proof of the occurrence of the accident.
Although defendants argue plaintiff did not bear the burden of proving by a preponderance of the evidence the happening of the accident which he alleges caused his resulting disability, we find the evidence to be adequate under the prevailing jurisprudence.
Plaintiff testified he made a misstep as he was leaving his motel room doorway, causing him to wrench his lower back. He stated he immediately felt pain which became sufficiently acute so that he went to the emergency room at Doctors Hospital where he was seen by Dr. Baer I. Rambach. Dr. Rambach testified plaintiff gave him a history in accord with plaintiff's testimony and that he found objective symptoms of back pain and injury which were consistent with plaintiff's description of the accident.
In a workmen's compensation proceeding the testimony of the claimant alone is sufficient as to the happening of an accident if there is other corroborating evidence.
Sufficiency of Proof of the accident occurring within the course and scope of plaintiff's employment.
Davis testified he had been in Shreveport for two or three days prior to the accident to contact policyholders to take applications from new employees, or to discuss any problems with their group policy. He testified his primary concern was with a policy issued to Doctors Hospital that had previously been written by another agent no longer with the company. It is undisputed that any additional persons added to the policy would entitle Davis to a commission even though the policy was not initially written by him. Although plaintiff did not call any of the personnel from Doctors Hospital to confirm his testimony in this regard, we do not find any evidence in the record to refute or discredit the testimony of Davis of his purpose in being in Shreveport. He explained it was necessary to contact the person in charge of several departments to obtain permission to interview new employees on each of the *459 three shifts utilized by the hospital. Thus, it is logical more than one day would be required to complete this cycle at this institution. We conclude the evidence preponderates that Davis was in Shreveport engaged in services connected with Investors' insurance business.
The next issue is whether at the particular time the incident happened plaintiff was within the scope of his employment. We find the evidence to show he had completed his mission to Shreveport and was preparing to check out of the Alamo Plaza Motel in the early morning of April 10th when the injury occurred.
As a general rule an employee is not covered by the workmen's compensation statute while traveling to and from the place of his employment. However, this rule does not apply to a salesman who is required to travel and has no fixed place of employment.
The principle is well stated in Gautreaux v. Life Insurance Company of Georgia, 256 So.2d 832 (La.App. 3rd Cir. 1972), as follows:
"The general rule is that an injury suffered by an employee away from his employer's premises while going to or returning from work, does not arise out of and in the course of his employment. This general rule, however, is subject to a number of exceptions. It does not apply, for instance, where the employee is a traveling salesman, or where he is required to travel from place to place in the performance of his duties and to provide his own means of transportation in doing so. In such an instance there is no fixed place of employment and his hours necessarily are irregular. If the employee sustains an injury while traveling under those circumstances, although not on the employer's premises, his injuries will be considered as having been sustained in the course of his employment if he was then engaged about his employer's business, and not merely pursuing his own business or pleasure, and the necessities of his employer's business required him to be at the place of the accident when it occurred. Boutte v. Mudd Separators, Inc., 236 So.2d 906 (La.App. 3 Cir. 1970); Simmons v. Liberty Mutual Insurance Company, 185 So.2d 822 (La.App. 3 Cir. 1966); Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932); Aymonde v. State National Life Insurance Company, 138 So.2d 460 (La.App. 3 Cir. 1962); DeMaggio v. United Mills Corporation, 252 So.2d 530 (La.App. 4 Cir. 1971); Babineaux v. Giblin, 37 So.2d 877 (La. App. 1 Cir. 1948)."
The preparation being made by Davis to leave Shreveport to return to his home office in El Dorado is within the ambit of the holding in the Gautreaux case and we find Davis was within the course and scope of his employment at the time of the accident.
Extent of Disability.
On the same date of the accident plaintiff sought emergency treatment at Doctors Hospital from Dr. Rambach, an orthopedic surgeon of Shreveport. After overnight hospitalization he was allowed to return home to El Dorado. He continued to have low back pain and was hospitalized again in May, 1970, by Dr. Rambach for further treatment and evaluation. At this time Dr. Rambach diagnosed a possible degenerative disc in the lumbar region. Conservative treatment by the wearing of a brace was ineffective, and on July 7, 1971, a myelogram was performed which disclosed a herniated disc at L-4 and L-5. A partial hemilaminectomy was performed on July 9, 1971, resulting in the excision of the herniated disc. This operation apparently was successful in correcting the defect in plaintiff's back and after an uneventful recuperative period he was discharged from further treatment on January 8, 1972, by Dr. Rambach as having reached maximum recovery.
We have no difficulty in finding plaintiff was unable to perform all of the duties *460 required of him during the period of time between his injury and his discharge by Dr. Rambach on January 8, 1972. Although he attempted to work for a short period of time beginning in July, 1970, he testified he suffered extensive pain and was forced to quit his work. His testimony in this regard is corroborated by Dr. Rambach and plaintiff's wife.
The most difficult question presented is whether plaintiff was able to resume his former occupation or work of a reasonably similar nature after undergoing corrective surgery. Plaintiff contends that after long periods of sitting in the same position he develops pain in his low back which prevents him from carrying out the duties of an insurance salesman as extensive driving of an automobile is required in this line of work.
The only medical testimony in the record on this issue is that of Dr. Rambach, the treating physician. Dr. Rambach's testimony somewhat vascillates on the question of whether plaintiff can resume his work as a salesman. He is definite in the opinion plaintiff could not do manual labor without suffering pain. We think it a fair interpretation of his testimony to say he believes plaintiff will have some discomfort from time to time after sitting for an extensive period of time in an automobile. He is unable to say whether the discomfort would be such as to prevent plaintiff from pursuing his occupation as the degree of tolerance to pain is an individual thing which varies from person to person. Although Dr. Rambach does not feel the activity would be ideal for anyone with a back problem, he is of the opinion he probably could do it with some discomfort at times. He also concedes that back pain from sitting long periods of time in an automobile is not unusual to a person with a normal back.
A compensation claimant who can perform the duties of his employment although suffering some pain as a result thereof, is not entitled to benefits under the compensation statute unless the pain is substantial enough to be disabling, in that it prevents him from carrying out some of the functions of his employment, or would be injurious to his health. Perkins v. Southern Casualty Insurance Company, 262 So.2d 791 (La.App. 3rd Cir. 1972); Glidden v. Alexandria Concrete Company, 242 La. 625, 137 So.2d 894 (1962); Jackson v. American Mutual Liability Insurance Company, 242 So.2d 903 (La.App. 3rd Cir. 1971).
It is incumbent on the claimant to prove the facts relied on as establishing his disability. We are not convinced by the evidence in the record that plaintiff cannot perform substantially the same duties as an insurance representative that he carried out prior to his accident. He has made no attempt since corrective surgery to resume this line of work. Nor has he returned to Dr. Rambach for further treatment or complaints since January 8, 1972.
We do not consider the evidence sufficient to show that whatever degree of pain or discomfort he would suffer would be substantial enough to prevent him from fulfilling his duties as a commission insurance agent after his date of discharge from further medical treatment by Dr. Rambach. We therefore conclude plaintiff is entitled to benefits for a temporary total disability for the period from April 10, 1970, until January 8, 1972.
Plaintiff's W-2 forms filed in evidence in this case show his annual earnings from Investors in the year preceding the accident to be in excess of $5,000. He is thus entitled to the maximum weekly benefit provided under the compensation statute.
Although he is entitled to medical expenses, there is no evidence in the record showing the amount of such expenses. The rights should be reserved to plaintiff to recover medical expenses up to the maximum amount allowed under the statute.
Accordingly, the judgment appealed from is hereby reversed and it is ordered *461 that there be judgment in favor of plaintiff, Stanley R. Davis, and against defendants, Investors Preferred Insurance Company and Home Insurance Company, in solido, for compensation benefits in the sum of $49 per week for the period beginning April 10, 1970, and ending January 8, 1972, with legal interest thereon until paid, and for all costs, including the fee of Dr. Rambach which is hereby fixed at $100.
Plaintiff's right to recover medical expenses is reserved.