CLAIBORNE, Judge.
This is a suit for $49,370.93 allegedly due on open account for electrical work performed by the plaintiff on a vessel constructed by Larose Shipyard, Inc., for George Engine Company, Inc. both made defendants.
On December 5, 1973, a contract was entered into by the defendants under which Larose was to construct a pushboat for George according to certain plans and specifications prepared by the latter. The plaintiff was hired by Larose to do the electrical work on the vessel and it did so. At the completion of the job, R. S. Electric remained unpaid.
Suit was originally filed against Larose and George, and later the petition was amended to add Leroy J. Delgrandile, Sr., president of Larose; as a defendant. After trial on the merits, judgment was rendered in favor of the plaintiff against Larose and George, in solido, but was dismissed as to Delgrandile, as to whom issue had never been joined. Only George has appealed, contending that it should not be held liable with Larose. As appellant does not complain about Delgrandile’s dismissal, the only issue before the Court is the liability of George.
It is clear that the plaintiff performed the electrical work and was not paid and that it should have judgment against La-rose who hired it to do the electrical work on the vessel.
The contract between Larose and George contains these provisions:
“THIS CONTRACT, made and entered into as of the _ day of _, 19_, by and between LAROSE SHIPYARDS, INC., a corporation organized and existing under the laws of Louisiana, having a principal place of business at Larose, Louisiana (hereinafter referred to as “SUB-CONTRACTOR”), and GEORGE ENGINE COMPANY, INC., having its principal place of business in Harvey, Louisiana, (hereinafter referred to as “BUILDER”).
George intended immediate sale of the vessel to a third party upon completion.
The theory of the plaintiff’s case as to George is that, despite the terms of the written agreement, Larose was really not an independent subcontractor, and that in hiring the plaintiff Larose acted as agent for George, thus subjecting George to liability for the amount owed.
In a thorough and well-reasoned opinion, the trial court found that George exercised control and supervision over the job to such an extent that Larose was its agent, not an independent contractor. We find that the record fully supports that conclusion.
Counsel have cited cases which set forth the rules regarding the distinction between an independent contractor and an employee or servant. Shelton v. Barber Brothers Company, 94 So.2d 489 (La.App. 1st Cir. 1957); Verrett v. Houma Newspapers, Inc., 305 So.2d 547 (La.App. 1st Cir. 1974). These cases include among the characteris *785 ties or tests of an independent contractor relationship the following:
1) existence of a contract between the parties;
2) a specific piecework as a unit to be done according to the contractor’s own methods, without being subject to the control and direction,' in the performance of the service, of the employer, except as to the result;
3) a specified and fixed price;
4) duration for a specified time and not subject to termination or discontinuance at the will of either party without a corresponding liability for its breach.
The greatest of these is held to be the absence of control of the work exercised by the employer. In this regard the right of control, rather than the actual control exercised, has repeatedly been considered the important criterion. Thus if the employer has the right of control it is immaterial that the right is not exercised or that there is no actual supervision of the work. On the other hand, the right to control may be inferred from the actions of the parties with respect to actual supervision and control. An employer who has exercised control and supervision of the work cannot characterize the relationship as one of employer and independent contractor simply because the written contract did not specifically authorize such control.
While we are not here concerned with the distinction between the master-servant relationship and the employer-independent contractor relationship but rather with the distinction between the latter relationship and agency, the tests are similar. In 2A C.J.S. Agency § 12, pp. 570ff the comparison is stated thus:
Generally speaking, whether a person is an independent contractor or an agent is determined by the same rules as those applicable in determining whether he is an independent contractor or an employee or servant, and by the general principles of agency. There are various tests which may be invoked, and a number of factors to be considered, and each case must be decided on its particular facts.
Right to control work. Whether the employer has the right to control the details of the work is the usual test for determining if the relationship is that of principal and agent or employer and independent contractor, and this is the most important factor to be considered.
* * * * * *
Where one who performs work for another represents the will of that other, not only as to the result, but also as to the means by which the result is accomplished, he is not an independent contractor but an agent; and the relationship is one of agency when the employer reserves control and an interest in the performance of the work other than the finished product, or where the contract shows a recognition of the responsibility of the employer for obligations incurred by the other party.
The written contract in the case at bar on its face provides for a specific piece of work at a fixed price, and it is not subject to termination or discontinuance by either party. Both the work and price are made subject to amendment by change order. (As a matter of fact various change orders were made.) With respect to supervision and control the contract provides:
SUB-CONTRACTOR will furnish reasonable space at its yard for the duly authorized representative of BUILDER who shall have reasonable access to the work of SUB-CONTRACTOR. BUILDER’S representatives shall promptly inspect and accept all workmanship and material which is in conformity with the contract specifications and contract plans and shall, with equal promptness, reject all workmanship and material which does not comply with the contract specifications and contract plans provided that the acceptance of such workmanship and material by BUILDER’S representative shall not prejudice the rights of PURCHASER under the provisions of ARTICLE VII hereof.
*786 While the contract provision does not necessarily contemplate supervision to an extent greater than expected from an architect, clerk-of-the-works or other owner’s representative, the actual control exercised by George exceeded mere inspection and acceptance of workmanship and material for conformity with contract specifications. From the actions of the parties as well as the direct testimony of Larose personnel it must be concluded that such supervision and control by George was contemplated and intended by the parties.
The evidence shows that George’s judgment was final on all questions of importance. George’s personnel were highly qualified and possessed superior technical knowledge recognized by Larose’s personnel. Although personal on site visits to Larose’s yards were made only from three to five times a month, frequent telephone conferences were initiated by Larose personnel for advice upon the means of resolving occasional problems encountered. George personnel sometimes required that part of the work be re-done in a different manner although the work was not shown to fail to comply with specifications. As stated by the district court, “George may have claimed that Larose was an independent contractor, but insofar as its relationship with plaintiff was concerned, there was, as adduced by the testimony of George’s own personnel, a definite and substantial supervision by George of the work as it progressed. When decisions were to be made George made the decisions.”
Not only did George personnel virtually take over control of the means of performance but they assumed a proprietary right in the project long before the boat was in fact completed, and when it appeared that Larose was not paying other suppliers and sub-contractors, George paid them directly. One of these payments was made jointly to Larose and Marine Engineering, Inc., but other payments were made without prior consultation with Delgrandile and were apparently made to forestall the possibility of lien filings against the boat. Some payments were made for insurance coverage.
When the vessel was near completion George filed with the United States Coast Guard 1) a Master Carpenter’s Certificate and 2) an Application for admeasurement. A signature blank on the latter with the indication it was to accommodate the signature of the “owner, builder or agent”, was signed, “Larose Shipyards, Inc. by: Leory J. Delgrandile, H.J.L., ITS PRESIDENT”. The initials H.J.L. are those of one of George’s employees who signed for Del-grandile. The application for admeasurement was signed and submitted without Delgrandile’s prior or contemporaneous knowledge. This basic documentation of the vessel was essential to delivery of the boat to the ultimate purchaser.
Delgrandile, who expected to use the Master Carpenter’s Certificate (which he called a “release” of the vessel) as assurance of payment, claimed he did not realize he had signed this document in blank at the time of the contract signing. No improper motive in the handling of documentation was suggested by plaintiff or Larose, but it demonstrates that George with the consent of Delgrandile (perhaps unwitting) intended from the outset to have control over possession of the vessel upon completion without tender of delivery for acceptance. George had physical possession of the pushboat pri- or to its completion and acceptance when after trials it was determined that the vessel should be taken to Avondale Shipyards for the purpose of correcting a defective rudder shaft installation. The work done at Avondale was wholly beyond the control of Larose.
Finally, there is conflicting testimony with regard to the engagement of plaintiff’s services for the electrical work. Del-grandile testified that he was required to obtain prior approval from George before hiring R. S. Electric, and that George gave its approval. One of George’s employees testified he had no prior knowledge of La-rose’s choice of electrical contractor. Another testified that he had foreknowledge, but that George was not consulted for approval nor was such approval necessary. The district court apparently resolved the *787 credibility question by concluding, as follows: “It is true that Larose hired plaintiff, but it is equally true that it was only done with the approval of George and on behalf of George”. As pointed out by the district court, there may be (and probably are) differences to be resolved between Larose and George which were not placed before the court by third-party pleading, but “insofar as plaintiff was concerned, Larose was not an independent contractor, but acted as George’s agent”.
The judgment of the District Court, with whose conclusions we agree, will be affirmed, all costs of this appeal to be paid by the appellant.
Affirmed.