631 So.2d 1231 (1994)
Billy J. ADAMS
v.
GREENHILL PETROLEUM CORPORATION.
No. 93-CA-795.
Court of Appeal of Louisiana, Fifth Circuit.
January 25, 1994.
*1233 Kerry E. Shields, Gretna, for plaintiff/appellee.
Kent B. Ryan, Hal C. Welch, Lemle & Kelleher, New Orleans, for defendant/appellant.
Sophia G. Pappas, New Orleans, for intervenor/appellee Travelers Ins. Co.
Before KLIEBERT, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
This is an appeal of a trial court judgment, rendered in favor of plaintiff and against defendant in the sum of $11,371.00, plus interest and costs. Defendant appeals, arguing that an independent contractor relationship existed which prevented defendant from being liable for the damages to plaintiff. Alternatively, the defendant argues the plaintiff was contributorily negligent for his damages. For the following reasons, we affirm.

FACTS
During the spring of 1990, plaintiff, Billy J. Adams, was employed as a truck driver by Acme Truck Line ("Acme"). On May 1, 1990, Mr. Adams was injured while helping to load his truck with oilfield equipment for transport at a Lafitte Landing, Inc. ("Lafitte") loading yard in Lafitte, Louisiana. Lafitte had entered into a Master Service Agreement ("the contract") with defendant/appellant, Greenhill Petroleum Corporation ("Greenhill"), wherein Lafitte would provide support services to Greenhill's offshore operations. As part of the contract, Lafitte provided employees and equipment (cranes, forklifts, etc.) to load and unload trucks and/or vessels with oilfield equipment used by Greenhill. Greenhill contracted with Acme to transport oilfield equipment to and from the various loading yards where it was needed. Mr. Adams was injured at the Lafitte yard when a Lafitte employee who was operating a forklift negligently dropped the forks, causing the pipes he was loading onto Mr. Adams' truck to fall and injure Mr. Adams' hand and wrist.
Mr. Adams filed suit against Greenhill for the damages he suffered as a result of the accident. After a one-day bench trial on the merits on April 13, 1993, the trial court rendered judgment in favor of Mr. Adams and against Greenhill in the sum of $11,371.00 (representing $6,000.00 in general damages, $2,500.00 in lost wages, and $2,871.00 in medical expenses), plus interest and costs.[1] Greenhill has suspensively appealed this judgment, arguing: 1) the trial court erred as a matter of law in finding that the Lafitte employee responsible for plaintiff's injuries was not an independent contractor; and 2) the trial court erred in not finding the plaintiff contributorily negligent in causing his own injuries.

DISCUSSION
The distinction between employee and independent contractor status is a factual determination which must be decided on a case-by-case basis, taking into consideration the total economic relationship between the parties and the various factors weighing either in favor of or against an employeremployee relationship. Sones v. Mutual of Omaha Insurance Company, 272 So.2d 739 (La.App. 2d Cir.1972), writ denied, 273 So.2d 292 (La.1973); Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736 (La.App. 1st Cir. 1989), writ denied, 553 So.2d 466 (La.1989). All parties agree that the Louisiana Supreme *1234 Court case of Hickman v. Southern Pacific Transport Company, 262 So.2d 385 (La.1972) governs the main issue of whether an employer-employee relationship or a principalindependent contractor relationship existed between Greenhill and Lafitte. If Lafitte is an independent contractor under Hickman, Greenhill cannot be liable for the negligent acts of the Lafitte employee. Hickman established a test with five conditions, all of which must be met for a party to be found an independent contractor:
1. There is a valid contract between the parties;
2. The work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it;
3. The contract calls for specific piecework as a unit to be done according to the independent contractor's own methods without being subject to the control and direction of the principal, except as to the result of the services to be rendered;
4. There is a specific price for the overall undertaking; and
5. Specific time or duration is agreed upon and not subject to termination at the will of either side without liability for breach.

Smith v. Crown Zellerbach, 486 So.2d 798, 801 (La.App. 1st Cir.1986), writ denied, 489 So.2d 246 (La.1986).
We shall analyze the evidence as it bears on these conditions, in determining whether the trial court was manifestly erroneous in finding that the negligent Lafitte employee was a borrowed servant of Greenhill.
The contract entered into between Greenhill and Lafitte satisfies the first condition of the Hickman test. As to the second condition, David Freeman, Greenhill's production foreman who worked at the Lafitte yard, testified at trial that Greenhill is in the oil and gas production business, has many of its oil fields offshore and requires the use of loading yards such as the one in Lafitte to support its offshore operations. While the nature of Lafitte's work may be independent of Greenhill's enough to meet the second condition of the Hickman test, we will address this issue in more detail when we discuss the nature of Lafitte's work vis-a-vis the nature of Greenhill's work.
As correctly noted by the trial court, the third condition of the Hickman test was clearly not met by Greenhill. The contract fails to call for specific piecework as a unit to be done by Lafitte. The contract is very general in nature and can be best described as a general services contract. With regards to the work to be performed under the contract, Mr. Freeman testified that Lafitte was to perform crane and forklift operations (necessary to load and unload the trucks and vessels) as well as various other duties, including "cutting grass, cleaning up, spreading shells, moving pipe racks." He testified that forklift services were $40.00 per hour, crane services were $100.00 for the first hour and $90.00 for all subsequent hours and roustabout services (which included the "various other duties" described above) were $14.00 per hour. However, none of these services are provided for under the contract. All the contract provides with regards to the work to be performed by Lafitte was: "This agreement shall control and govern all work performed by Contractor [Lafitte] for Company [Greenhill] under subsequent verbal and/or written work orders ..." Under the third condition of Hickman, the contract must call for specific piecework as a unit to be done by Lafitte. It clearly did not. Moreover, under the third condition of Hickman, Lafitte also could not have been subject to the control and direction of Greenhill except as to the result of the services to be rendered. While Mr. Freeman and Carol Schieffler (Greenhill's dispatcher at the Lafitte yard who ordered the work to be performed by Lafitte employees) both testified that they did not exercise operational control over the work performed by Lafitte, "it is not the supervision which is actually exercised that is significant; rather, it is the right to exercise it which is of primary concern." Stovall v. Shell Oil Co., 577 So.2d 732, 739 (La.App. 1st Cir.1990), writ denied, 582 So.2d 1309 (La.1991); citing Hickman, supra at 391. From the testimony of Freeman and Schieffler, the general nature of the contract, as well as the work to be performed (including cutting grass and cleaning up) it is clear *1235 that both had the right to exercise control and direction over the Lafitte employees at the Lafitte yard.
The trial court was also correct in finding the fourth condition of Hickman as not being met. While costs for forklift, crane and roustabout services were agreed upon between Greenhill and Lafitte, there was no specific price for the overall undertaking Greenhill paid Lafitte on an hourly basis for a nonspecific amount of work. Lafitte employees served at the discretion and direction of Greenhill, only performing those tasks which Greenhill specifically told them to perform.
Appellant argues that the final condition of Hickman was met because the contract provided that cancellation of the contract "may be effected at the option of either party by giving the other party thirty (30) days notice in writing to that effect ..." and that "such cancellation shall not relieve either party of its obligation arising from or incident to the work performed hereunder prior to the time such cancellation becomes effective." Appellant urges that this provision satisfies the fifth condition of Hickman, that a specific time or duration is agreed upon and not subject to termination at the will of either side without liability for breach. Appellant cites Johnson v. Wood, 590 So.2d 1243 (La.App. 1st Cir.1991) and Monnerjahn v. Times Picayune Publishing Co., 67 So.2d 756 (Orl.La.App.1953) in support of this argument. Both cases involved newspaper deliverers having contracts with newspaper publishers which could only be cancelled by either party on two weeks notice. In both cases the newspaper deliverers were found to be independent contractors. Notwithstanding that a cancellation provision is only one of many factors to be considered in determining independent contractor status, this issue is undecided at best. Monnerjahn was decided well before the Hickman test was established and Johnson, which affirmed a summary judgment in favor of the publisher, was reversed on appeal by the Louisiana Supreme Court.[2] We are not persuaded by appellant's argument that simply restricting cancellation of the contract fully satisfies the fifth Hickman condition, which provides that a specific time or duration be agreed upon.
Another important factor "bearing on the status issue is whether the worker is performing services that are an integral part of the principal's business, or whether the worker is performing work independent of the principal's business." Stovall, supra at 739-40. Mr. Freeman testified at trial that without the assistance of the workers at Lafitte, Greenhill could not have operated offshore because it could not have gotten the necessary equipment offshore. Although the nature of Lafitte's business (loading and unloading equipment and performing roustabout services) may have been independent of the nature of Greenhill's business (offshore oil production), we find, as did the trial court, that at the time of the accident, Lafitte was performing services which were an integral part of Greenhill's business, adding further weight to the conclusion that the negligent Lafitte employee was a borrowed servant of Greenhill. Accordingly, we find that the trial court was not manifestly erroneous in determining that the negligent Lafitte employee was a borrowed servant of Greenhill.
Appellant's final argument on appeal is that plaintiff, Billy Adams, was contributorily negligent in causing the injuries he sustained. Mr. Adams testified at trial that at the time of his accident, he was directing a Lafitte forklift operator to move a bundle of pipes to a safer position on his truckbed for transportation. Mr. Adams testified that the forklift operator suddenly dropped the forks, causing the bundle to fall and two of the pipes to bounce back at him. Mr. Adams further testified that his left hand and wrist were injured when he reflexively put his hands up to protect himself.
It is well settled that the allocation of comparative negligence is a factual matter lying within the discretion of the trial court, and such determination will not be disturbed on appeal in the absence of manifest error. Scamardo v. New Orleans Stevedoring Company, 595 So.2d 1242, 1248 (La.App. 4th Cir. 1992). When there is evidence before the *1236 trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, the appellate court should not disturb this factual finding in the absence of manifest error. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). After a thorough review of the record, we cannot say that the trial court was manifestly erroneous in finding Mr. Adams not at fault in causing the injuries he sustained.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against appellant.
AFFIRMED.
NOTES
[1] The Travelers Insurance Company, Acme's compensation carrier, intervened in the suit, asking for reimbursement for the amounts it paid to plaintiff in compensation and medical expenses. The trial court judgment awarded $4,326.75 of the $11,371.00 total to the Travelers as the stipulated reimbursement amount. Travelers has filed an appellee brief in this appeal, asking that the trial court judgment be affirmed.
[2] See Johnson v. Wood, 592 So.2d 1293 (La. 1992).